Fisher *v.* White.

---

### FISHER *v.* WHITE *et al.*

In actions against boats and vessels, under the statute, the lien attaches only when service is had in the suit.

It was not the intention of the Legislature to make the lien attach when the liability was incurred.

APPEAL from the District Court of the Twelfth Judicial District.

This was an amicable suit, to determine the right of possession to the steam-tug Mary Anne. On the third of November, 1854, the Humboldt Lumber Manufacturing Company, mortgaged the vessel to A. S. Tobias, the vessel being left in the possession of the company. On the second of April, 1855, a new mortgage was executed, and Tobias wrote across the face of the original mort-

Fisher *v*. White.

gage, as recorded, the words: "I acknowledge to have received full satisfaction of the within mortgage, and of all demands, to date." No money, however, was paid, and Tobias made the memorandum at the request of the clerk of the custom-house, who said such a discharge was necessary before the new mortgage could be recorded. Tobias, at the date of the second mortgage, took possession of the vessel, and on the tenth of August, 1855, assigned the mortgage, and transferred the possession of the vessel to plaintiff, who commenced his suit to enforce his lien against the vessel, on the fourth of October, 1855, which suit was still pending, after the commencement of this suit in the Court below.

On the thirty-first of May, 1856, defendant White recovered judgment against the vessel for the mal-performance of a contract for the transportation of property, on the sixth of Dec., 1854. In that action an attachment was issued, and the vessel seized by defendant, Reed, as sheriff, on the twenty-first of April, 1856; and on the thirteenth of June, 1856, execution was issued and placed in Reed's hands. At the time Fisher purchased the mortgage from Tobias, he knew of White's cause of action. The mortgages were both duly recorded in the custom-house, at San Francisco. White knew of the existence of the mortgages. He was a stockholder in the company, and was a defendant in the suit of Fisher, to enforce his lien. Judgment was given for plaintiff, and defendants appealed.

*S. M. Bowman* for Appellants.

*First*—The judgment is against the maritime law.

The liability of the vessel to answer for the non-execution or mal-performance of a contract of affreightment, at common law, entered into by the owners, agent, or master, will not be seriously questioned.

"By the general maritime law, every contract of the master, within the scope of his authority as master, binds the vessel, and gives the creditor a lien upon it for his security." The Paragon, Ware's R., 322.

The ship and freight are, by the marine law, bound, in specie, to the performance of every contract, made by the master, within the scope of his authority. 3 Kent., 204; The Waldo, Davie's R., 161; Hewitt *v*. Bush, 17 Maine R., 147.

His lien is not defeated by a *bona fide* sale of the vessel before he has had an opportunity of enforcing it, and still less when the purchaser has a knowledge of the claim. The Rebecca, Ware's R., 188.

There must be a knowledge of the injury on the part of the claimant, and a manifest intention to abandon the claim, to discharge the vessel from liability. The Robert Morris *v*. William-

son, 6 Ala., 50; The Reeside, 2 Sumner, 467; The Brig Casco, Davie's R., 184.

, But the counsel for the respondent insists, that notwithstanding such.is the maritime law, they claim under a deed of sale, proved to be a mortgage, dated prior to the commencement of our suit against the tug, and prior to our attachment, and that we are cut out of our lien by such transfer; and that in order to protect our claim, it is necessary we should have had the possession of the vessel under our attachment.

This view of the case arises from the improper understanding of the term lien, when employed in cases of this kind.    The appellant, White, cannot be said to have had a lien on the vessel, strictly speaking, until the levy of his attachment.    Up to the levying of the attachment he had a claim or privilege which was *perfected into* a lien the moment the attachment was levied.    In the language of the books :

" The lien is enforced because it is of a marine nature, and the moment its existence is established the jurisdiction of the admiralty attaches *proprio vigore.*"    Flander's Mar. Law, § 242; Dom. Civ. Law, § 1736.   In the case of the Brig Nestor, 1 Sum; 81; Fland. on Ship'g, p. 173; Angel on Carriers, p. 670—673.

*Second*—The judgment is against the statute.

The statute ordains that, " All steamers, vessels and boats, shall be liable :"

1.  For supplies.

2.  For services rendered on board.

3.  For materials furnished for construction or repairs.

4.  For wharfage and anchorage.

5.  For mal-performance or non-performance of contracts of affreightment.

6.  For injuries committed by them to persons or property. .

It follows in the precise track of the maritime law, and recognizes its well settled principles.    It gives the remedy directly against the vessel, by attachment according to the admiralty practice; and it has always been held and construed by the U. S. District Court, as having been intended by the Legislature to give the same rights and remedies against domestic vessels plying on the waters of this State, afforded at common law in admiralty against merchant ships.

Section 328 provides that in case the attachment is not discharged, and a judgment be recovered and execution issued, the sheriff shall sell the vessel, and shall apply the proceeds to the payment of the judgment and costs.   The only preference given over the judgment-creditor, is in case of claims for wages of " mariners, boatmen and others emyloyed in the service of the vessel," which must be first paid; and § 329 shows how such privileged claimants shall intervene for their interest in the proceeds.

But the entire act proceeds upon the idea of the common law, and makes no distinction between a mortgagee and an owner. It makes the vessel directly liable, regardless of ownership. The mortgagee is in fact the conditional owner. His right is to the title of the vessel. It is of the ownership. The owner cannot defeat our judgment, and how can a mortgagee, who derives all his right and title from the owner, do that which the owner cannot do?

A law similar to ours exists in the State of Illinois, in regard to which the Supreme Court of that State says: "These provisions clearly create a lien in favor of those engaged in the running and management of a vessel, and those furnishing her with materials or supplies. The lien attaches the moment the liability is incurred. It is acquired by force of the statute and not by force of the levy, as in the case of an ordinary attachment." Germain *v.* Steam-tug Indiana, 11 Ills. R., 537.

The Illinois statute employs the same language as ours. Boats and vessels of all descriptions shall be liable. The only material difference between the two is, the Illinois statute requires the claims to be enforced within three months, while ours prescribes no limit of time.

*Whitcomb, Pringle & Felton*, for Respondents.

In the case of Meiggs & Pray *v.* David Scannell, decided at the April Term of this Court, the Court withheld its opinion upon the question, whether the causes of action recited in our statute against boats and vessels, are liens from the time of the accruing of the cause of action. That is the first question, to which we ask the attention of the Court in this case; but as we have already said as much on that point as was reasonable, in the respondents' brief, filed in that case, we here beg leave simply to refer the Court to the brief there filed, adding only in this place, the suggestion, that the present case is a good illustration of the danger of allowing these causes of action to take rank, as admiralty liens.

But secondly, the respondent holds that even if the Court accedes to the general principle contended for by the appellant, viz.: that these causes of action are liens from the time of the accruing of the cause of action, yet the mortgage is entitled to a preference here. For now we are appealing to admiralty law; which has no iron rule of preference, but balances all the equities of each case.

Here, the respondent Fisher and the original mortgagee, are purchasers for valuable consideration. True, Fisher knew of the damage when he took the mortgage; but the damage might possibly not have resulted from the fault of the carrier; the non-performance of the carrier's contract might very well have happened from causes beyond the carrier's control. The

28

liability was not inevitable, and the mortgagee had good reason to suppose that the claim of White would never have been set up. White delayed an unreasonable time, from Dec. 6, 1854, to April 21, 1856, nearly two years.

White was himself a stockholder of the company (the mortgagor) and thus himself equitably a mortgagor, and this suit is not brought until a foreclosure is actually commenced, and himself a party defendant.

If the Court is sitting as a Court of Admiralty, it will refuse its aid : under such circumstances, against the mortgagee, an uncertain cause of action, not of a favored class, as for supplies, work or labor, etc., and delayed until after a new liability, by specific contract, is incurred.

But perhaps the strongest ground of the defendant, is, that there was an actual favor in favor of the mortgagee of the appellants claim.

The mortgage was originally made before the appellant's cause of action arose, but no possession was taken by the mortgagee. But, substantially, a new mortgage was affected four months after the appellant's cause of action arose, and then the mortgagee took possession. This mortgage was executed by the company of which the appellant was a member, the appellant making no claim, and it does not appear that the then mortgagee had any notice of his claim. Whatever question might have arisen under the first mortgage, the circumstances under which the second was executed, certainly amounted to a clear waiver in favor of the mortgagee of the appellant's floating claim,

The decisions of this Court have been very strong, on the doctrine of waiver, and are too familiar to require reference.

BURNETT, J., after stating the facts, delivered the opinion of the Court—TERRY, C. J., concurring.

The important question arising in this case is, whether the statute gives a lien from the time the cause of action accrued, or only from the time the suit is commenced. If the lien commences when the cause of action accrued, then White would be entitled to satisfy his judgment in preference to the mortgage, conceding that he has not waived his priority, and that the first mortgage was discharged by the taking of the second.

In the case of Averill v. The steamer Hartford, 2 Cal. Rep., it was held that service upon a person standing in a particular relation to the vessel, was equivalent to an actual seizure of the thing, for the purpose of conferring jurisdiction upon the Court from which the process issued. And, in the case of Meiggs & Pray v. Scannell, April, 1857, it was held, that the lien attached to the vessel when the service was had in the suit.

These decisions, especially the last, would seem substantially

to determine this point. In the last case, the opinion of the Court says: "The lien of the plaintiff, in the suit of Conway v. Madonna, attached as soon as the service was had in that suit." If the lien *then* attached, it did not exist before.

The learned counsel for the defendants, referred us to the case of Germain v. The Steam-tug Indiana, 11 Ill. R., 525, in which the Court held, that the statute of Illinois did create a lien the moment the liability was incurred; but the statute of that State expressly provides that "no creditor should be allowed to enforce the lien created" by the act, unless suit be instituted "to enforce such lien within three months after the indebtedness accrues, or becomes due according to the terms of the contract." Rev. Stat., 71, 72. And the only remedy provided for by the statute is, an attachment of the vessel. So, the statute of Missouri expressly creates a lien, and gives only the remedy by attachment. 1 Rev. St., 1845, p. 181.

There is nothing in our statute expressly creating a lien. And, from the fact that there is no express provision to this effect, and the word *lien* is studiously omitted, and no *time* is limited, within which proceedings should be commenced, and that a suit may be brought by the service of the summons, without attachment, it would seem not to have been the intention of the Legislature to make the lien attach when the liability was incurred. The intention of the act was, to give priority to the most diligent creditor, except claims for wages, which are preferred before all the others mentioned in the statute.

This view of the case renders it unnecessary to decide the other questions raised by the counsel of respondent.

Judgment affirmed.