[S.F. No. 23344. In Bank. Feb. 13, 1976.]

VIRGINIA A. BECKER, Plaintiff and Appellant, v.
FRANK C. LINDSAY, Defendant and Respondent.

189

---

**COUNSEL**

Joseph B. Harvey for Plaintiff and Appellant.

John D. Bessey and Dahl, Hefner, Stark, Marois & James for Defendant and Respondent.

Clifford C. Sweet, John H. Erickson, Miriam Steinbock, Daniel M. Luevano, Rosalyn M. Chapman and Richard A. Paez as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

TOBRINER, J.—In this case a plaintiff-creditor appeals from an order quashing a previously issued writ of execution and setting aside the levy upon real property made pursuant to it. The sole question before us is whether a declaration of homestead recorded before judgment defeats a prior attachment lien.

On March 2, 1971, plaintiff filed an action against defendant in the Superior Court of Lassen County to recover monies owed her on an unsecured promissory note. On March 5, 1971, pursuant to a writ of attachment issued by that court, the Sheriff of Colusa County attached certain real property belonging to defendant. On March 12, 1971, subsequent to the attachment but prior to any judgment, defendant's wife recorded a declaration of homestead on the attached property. Defendant failed to appear in the action on the promissory note, and on April 27, 1971, the court entered a money judgment for the plaintiff by default and issued a writ of execution. Subsequently, a levy was made pursuant to that writ.[1]

Following some proceedings in the Superior Court of Colusa County,[2] the matter returned to the Lassen County court. On October 17, 1973, that court, pursuant to defendant's motion, entered its order quashing the writ of execution and vacating the levy. Plaintiff appeals from this order. ■ Because we conclude that a declaration of homestead recorded before judgment does defeat a prior attachment lien, we affirm the order below.

Section 1240 of the Civil Code places the homestead beyond the reach of most creditors. It stipulates that "[t]he homestead is exempt from execution or forced sale, except as in this Title provided." The property

---

[1] Contemporaneous with the proceedings below, defendant filed a bankruptcy petition in federal court and was duly adjudged a bankrupt. The parties agree, however, that defendant's discharge in bankruptcy does not bear upon the issue before us. Defendant could not have had the lien declared null and void under the provisions of section 67 of the Bankruptcy Act (11 U.S.C. § 107) since that section requires that the bankrupt be "insolvent" at the time the lien was obtained and, as defined in section 1(19) of the act (11 U.S.C. § 1(19)), defendant was not insolvent.

[2] On December 20, 1971, defendant filed an action against the plaintiff and the Sheriff of Colusa County in the Superior Court of Colusa County, seeking to quiet title on the attached property and to obtain injunctive relief. The Colusa court issued a temporary restraining order preventing any execution sale pending a hearing on January 3, 1972. That hearing was continued to January 10, 1972, at which point the Colusa court denied the preliminary injunction and dissolved the temporary restraining order so that the action would proceed in Lassen County Superior Court.

involved in the present case, then, is beyond plaintiff's reach unless it is embraced by one of the exceptions alluded to in section 1240. Section 1241 of the Civil Code recites the specific exceptions to the general exemption of the homestead. The provision whose relevance we must assay is section 1241, subdivision 4 (hereafter referred to as 1241(4).) It provides: "The homestead is subject to execution or forced sale in satisfaction of judgments obtained . . . on debts secured by encumbrances on the premises, executed and recorded before the declaration of homestead was filed for record." We conclude that an attachment is not an "encumbrance" within the meaning of section 1241(4) and, consequently, that the homestead in the instant case enjoys immunity from execution by plaintiff.

■    Before 1951, section 1241(4) referred to "mortgages," not "encumbrances." In 1951 the Legislature substituted the word "encumbrances" for the word "mortgages"; before the adoption of that amendment there could be no doubt that a declaration of a homestead prevailed over a prior attachment. (*Yager* v. *Yager* (1936) 7 Cal.2d 213, 217 [60 P.2d 422, 106 A.L.R. 664]; *Jacobson* v. *Pope & Talbot* (1932) 214 Cal. 758, 760 [7 P.2d 1017].) Since the enactment of the amendment no case has construed this section.[3] The central inquiry, therefore, is whether the Legislature intended the amendment to supplant existing law and subordinate a homestead to a prior attachment.

We think that the Legislature in all likelihood reworded section 1241(4) to make certain that the section clearly expressed upon its face the coverage which the courts had previously accorded it. Although former section 1241 spoke only of mortgages, the courts had construed it to embrace deeds absolute intended to be mortgages (*First National Bank* v. *Merrill* (1914) 167 Cal. 392 [139 P. 1066]) and had intimated that it might govern trust deeds as well. (*Carpenter* v. *Hamilton* (1944) 24 Cal.2d 95 [147 P.2d 563, 153 A.L.R. 733].) Consequently, the language of the pre-1951 version of section 1241(4) was somewhat misleading; it ostensibly limited the section's scope to one species of consensual lien—the mortgage—notwithstanding judicial pronouncements that its compass was broader. Given the disparity between the actual and the

---

[3]Defendant relies upon *Johnson* v. *Brauner* (1955) 131 Cal.App.2d 713, 714-715 [281 P.2d 50], but that case involved an application of the pre-1951 law. Defendant also cites *Putnam Sand & Gravel Co.* v. *Albers* (1971) 14 Cal.App.3d 722 [92 Cal.Rptr. 636], which ruled that a homestead recorded subsequent to the recording of a lis pendens defeated the lis pendens. That case is of dubious relevance, however, since it never specifically addressed the scope of section 1241(4) but dealt, instead, with section 1241, subdivision 1.

ostensible ambit of former section 1241(4), legislative action to synchronize the language with the judicial decisions was to be expected.[4] We see no reason to assume, therefore, that the Legislature intended to modify the law when it enacted the 1951 amendment. The presumption that legislative action was intended to change the law (*Estate of Todd* (1941) 17 Cal.2d 270 [109 P.2d 913]) has no bearing upon legislative actions that are readily explained by other purposes.

The language of amended section 1241(4), moreover, yields two bases for concluding that the Legislature merely intended to clarify the existing law, not to expand the scope of this exception to the immunity of homesteads. First, the section speaks of "encumbrances executed and recorded." Mortgages and other consensual liens are "executed" when they are signed. Plaintiff contends that the signing of the writ of attachment by the county clerk is the "execution" to which the section refers. The code provisions, however, refer to this procedure as issuing, not executing, the writ.[5] Since the general understanding of lawyers and legal writers is that the writ is issued, not executed, the Legislature may well have intended the amended section to relate only to encumbrances such as mortgages and trust deeds which, in common legal parlance, *are* "executed" when they are signed.

Second, construing the word "encumbrances" in section 1241(4) to embrace attachments would effect the incongruous result that even an attachment that was not a valid lien would prevail over a homestead. The section gives the encumbrance priority once it is executed and

---

[4] Plaintiff argues that it is unlikely that the Legislature merely intended to embrace all consensual liens in section 1241(4) when it amended that section since all such liens already fell within section 1241, subdivision 3 (hereinafter referred to as 1241(3).) Section 1241(3) provides an exception from the homestead immunity for "debts secured by encumbrances on the premises executed and acknowledged by husband and wife, by a claimant of a married person's separate homestead, or by an unmarried claimant." Plaintiff's argument is not conclusive. First, prior to the 1951 amendment, section 1241(3) had also referred to "mortgages" rather than to encumbrances. Prior to amendment, then, no section had clearly embraced the other varieties of consensual liens. It was not surprising that the Legislature changed the word in both sections in order to keep them parallel. Second, 1241(3) deals with consensual liens effected by specified persons; section 1241(4), in contrast deals with consensual liens that are a matter of record without regard to who recorded or executed them. Consequently, the existence of section 1241(3) did not obviate the need to make it clear that 1241(4) extended to the full panoply of consensual liens.

[5] Plaintiff observes that section 153 of the Code of Civil Procedure requires that the clerk seal a writ of attachment and that section 1931 of that code indicates that affixing a public seal to a document attests to its "execution." None of the statutes dealing directly with the signing of writs of attachment, however, speaks of executing such writs; they speak instead of issuing them. (See former Code Civ. Proc., § 538.)

recorded; according to the plaintiff, then, an attachment would receive priority once it was signed by the clerk and recorded. An attachment, however, does not become a valid lien until it is served. (Code Civ. Proc., § 542a.) We doubt that the Legislature intended to subordinate homesteads to encumbrances that had not yet become liens against the property; yet this result must follow if an attachment is an encumbrance within the meaning of this section. Instead, we think that the Legislature intended this section to extend only to encumbrances such as mortgages and trust deeds which do take effect upon execution and recordation.

Although an attachment is certainly an encumbrance within many contexts,[6] proper attention to the semantic nuances of section 1241(4) suggests that it is not an "encumbrance executed and recorded" for the purposes of that section. This conclusion commands the unanimous endorsement of the commentators.

Witkin in 5 California Procedure (2d ed. 1971) observes that a homestead declaration "defeats a levy of execution where there was no judgment lien prior to the declaration." (P. 3417.) 2 Bowman, Ogden's Revised Real Property Law (1975) asserts that "[w]hen a declaration of homestead is recorded before a levy of attachment or after levy but before recording of an abstract of judgment, the attachment is defeated to the extent of the homestead exemption." (P. 1007.) 2 Miller & Starr, Current Law of California Real Estate (1968) adds to the consensus, concluding that "a declaration of homestead upon property after an attachment lien is levied but before a judgment is recorded has priority over the judgment." (P. 167.) Jackson, in California Debt Collection Practice (Cont. Ed. Bar 1968) concurs: "A validly declared homestead . . . is effective against any levy under a writ of attachment, even though the attachment is prior to the recordation of the homestead." (P. 225.)

At the very least, the wording of section 1241(4) renders it doubtful that the section subordinates a homestead to an attachment lien. In resolving any ambiguity, this court must heed the salubrious policy of interpreting the provisions of the homestead exemptions liberally for the protection of the homesteaders from the loss of their homes. (*Thorsby* v.

---

[6] Section 1114 of the Civil Code defines "incumbrances" to include "all liens upon real property." Section 542a of the Code of Civil Procedure provides in part: "The attachment . . . shall be a lien upon all real property attached . . . ." Since a levy of attachment is a lien, and since a lien is an encumbrance, it follows that an attachment is an encumbrance. This syllogism, however, falls short of establishing that an attachment is an encumbrance *within the meaning of section 1241(4)*.

*Babcock* (1950) 36 Cal.2d 202, 204 [222 P.2d 863]; *Bullis* v. *Staniford* (1918) 178 Cal. 40, 45 [171 P. 1064].) Witkin adds that the exemption must be construed with "extreme liberality" (5 Witkin, Cal. Procedure, *supra*, p. 3416 and cases cited.) This policy assumes peculiar importance in this case in light of the fact that countless homesteaders undoubtedly have relied upon our earlier pronouncements that attachment liens are subordinate to homesteads. If the Legislature intended to abrogate our rulings on this point, we assume that it would have done so in clear and unequivocal language. (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 152 [23 Cal.Rptr. 592, 373 P.2d 640].) The amendment to section 1241(4) hardly embodied such cogent and convincing language.

In short, we cannot conclude that the Legislature, in amending section 1241(4) in a way that did clarify the existing law, also intended to supplant a well established and protective tenet of homestead law when the language it purportedly chose to effect that end is ambiguous and, indeed, sufficiently oblique to escape notice by all legal commentators.[7]

The judgment is affirmed.

Wright, C. J., McComb, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

---

[7]Given this conclusion, we need not address defendant's claim that the lien in this case is invalid because of the retroactive impact of our decision in *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13].