[Civ. No. 15651. Third Dist. July 12, 1976.]

GEORGE RAY BUSSELL et al., Plaintiffs and Respondents v. UNION BANK, Defendant and Appellant.

COUNSEL

Donovan & Somers and Ronald J. Epman for Defendant and Appellant.

Odell & Grathwohl and James S. Graham for Plaintiffs and Respondents.

OPINION

**REGAN, Acting P. J.**—On April 29, 1970, plaintiff George Bussell gave a check to one Vernon Wilson who owned a parcel of real property in the Lake Tahoe area. The check was to purchase fee simple title to the property. However, at the request of Wilson, the check was made out by Bussell to the Tahoe Title and Guarantee Company to pay off an obligation secured by deed of trust on the property. Wilson told Bussell the title company was about to foreclose and he (Wilson) would prefer to sell to Bussell. The check was negotiated by Tahoe Title on April 30, 1970. However, the grant deed to the property was not executed until July 20, 1970, and recorded July 21, 1970. In the interim, on June 24, 1970, a notice of writ of attachment in the amount of $6,782.93, plus interest from July 28, 1967, was recorded against the property in favor of Commonwealth National Bank (defendant's predecessor in interest). Subsequently, on August 7, 1970, an abstract of judgment against Wilson in the same amount as the writ of attachment was recorded. It was not until January 1972 that plaintiffs requested a title search (when they were preparing to resell the property) and discovered the judgment lien on the property in favor of defendant bank.

Plaintiffs commenced this action to quiet title and for damages against defendant Union Bank as the primary defendant. Plaintiffs moved for partial summary judgment and the court granted the motion "predicated upon the unconstitutionality of the Writ of Attachment." Thereupon, judgment was entered quieting title in plaintiffs free of any lien or claim. The court concluded that the case of *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13], which held the statutory prejudgment attachment procedures unconstitutional,[1] should be given retroactive effect so as to invalidate an attachment which, prior to *Randone,* had ripened into a judgment lien on real property. We have concluded that the lower court erred.

---

[1]The attachment statutes with which we are here concerned are Code of Civil Procedure, section 537 et seq., as they existed prior to the 1972 amendments.

## I

In the trial court, plaintiffs sought to quiet title and remove the lien on two theories. First, the lien was invalid because the attachment was unconstitutional under *Randone.* ▇ Second, the attachment reached only Wilson's interest in the property, which, after April 30, 1970, was a mere "naked title," and since plaintiffs had paid the purchase price, the later execution of the deed was a mere formality; in other words, equitable title had passed because of an unrecorded agreement for the sale of the property prior to the attachment. In support of the second theory, plaintiffs cited *Iknoian* v. *Winter* (1928) 94 Cal.App. 223, 225-226 [270 P. 999] and *Davis* v. *Perry* (1932) 120 Cal.App. 670, 676 [8 P.2d 514]. These cases held, after a trial had established a conveyance prior to recording of a grant deed, that a creditor's lien applied only to whatever interest the seller-debtor retained on the property. In the instant case, there was of course no prior trial, and the passage or nonpassage of title before July 20 or 21, 1970, was a question of disputed fact insofar as the motion for summary judgment was concerned. The trial court tacitly recognized this by making no finding on the effect of the April 29, 1970, transaction, although making several "findings" as to other facts.[2] Defendant conceded that if "the effective transfer" of title was in fact made on April 29, 1970, defendant's asserted judgment lien was ineffective as to plaintiffs.

It was upon the first theory only that the trial court based its ruling. The court decided initially, *inter alia,* that the writ of attachment, when merged with the recorded abstract of judgment became a cloud on plaintiffs' title. It then ruled, as conclusions of law, (1) that under *Randone* and *Modern Management Method* v. *Superior Court* (1971) 20 Cal.App.3d 496 [97 Cal.Rptr. 791], the writ of attachment was null and void; (2) that being void, it was inoperative as constructive notice of defendants' claim for any purpose; (3) that since the writ of attachment was void there was no attachment which could merge into the abstract of judgment; and (4) that since the abstract of judgment was recorded subsequent to the grant deed, the interests of plaintiffs were superior to the judgment lien of defendant, and plaintiffs' title should be quieted.

---

[2]The "findings" were informational only, in the form of a memorandum opinion; a court is without power to make formal, binding findings on a motion for summary judgment. (*Perry* v. *Farley Bros. Moving & Storage, Inc.* (1970) 6 Cal.App.3d 884, 889 [86 Cal.Rptr. 397].)

## II

The *Randone* decision itself did not address the question of its possible retroactive effect. Three later cases are pertinent, however. *Modern Management Method* v. *Superior Court, supra,* involved a pre-*Randone* attachment, but no judgment as of the time a motion to dissolve the attachment was made and granted. The appellate court affirmed, holding that the intervening *Randone* decision had invalidated the attachment procedures so that the existing attachment was without statutory or other legal basis. It followed that the motion to dissolve was well taken.

*Gentlemen's Resale West* v. *Superior Court* (1972) 23 Cal.App.3d 518 [100 Cal.Rptr. 370], involved a motion to dissolve a pre-*Randone* attachment and also a motion for an order directing the sheriff to return a cash bond previously deposited with him for the purpose of releasing the attachment. (Code Civ. Proc., § 540.) There was as yet no judgment, but the *Randone* decision had been rendered. The trial court dissolved the attachment but refused to order the sheriff to release the cash bond. The appellate court properly held that it was an abuse of discretion not to release the cash deposit; since it had been given to the sheriff involuntarily and as a result of invalid statutory attachment procedures, it should be returned.

*Ataka America, Inc.* .v. *Crateo, Inc.* (1973) 30 Cal.App.3d 315 [106 Cal.Rptr. 280], held that an attachment filed before *Randone,* but released, could not be restored or renewed after *Randone,* even though a lower court order allowing its later renewal on certain conditions had been made prior to *Randone.* Again, there was as yet no judgment. .

It is apparent that none of the above cases support the proposition that *Randone* has retroactive effect in the sense advocated here. *Randone* held the attachment procedures invalid. The logical consequence of such holding was and is that all pending attachments under the aborted statutory authority are also invalid. ▪ Once however an attachment has been superseded by a *judgment lien,* it is outside the purview of the three cases above noted.

If *Randone* were held retroactive, it would mean that in all pre-*Randone* cases where attachment procedures resulted in judgments, and collections thereof out of the previously attached properties, all such judgments and collections could be set aside. Thus a person who before

*Randone* filed suit on an unsecured contractual obligation, attached a bank account and got his judgment paid, all in accordance with existing law, could now be faced with a suit to disgorge the money earlier collected. Such a result would be unfair to thousands of persons who relied upon the validity of the statutory scheme and would result in untold, and in our view, improper ex post facto litigation. (See *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421].)

The nonretroactivity of *Randone* was recognized in *Urich Oil Co.* v. *Crown Discount Dept. Stores* (1973) 34 Cal.App.3d 743 [110 Cal.Rptr. 316]. At page 747, the court states: "Under *Randone,* the original attachment . . . as applied to the facts at bench is unconstitutional. Had respondent made its motions [to discharge and release levy of attachment and exonerate undertaking] *prior to judgment* the order to dissolve the attachment and exonerate the bond would be proper and valid." (Italics added.) The court reversed the trial court's ruling granting the motions.

Most persuasive is *Pasadena Medi-Center Associates* v. *Superior Court* (1973) 9 Cal.3d 773 [108 Cal.Rptr. 828, 511 P.2d 1180], in which suit was filed on two unsecured promissory notes against a corporation and a partnership. Real property of the corporation was attached. Summons was then served upon an ostensible officer of the corporation, after which judgment was obtained, followed by a levy of execution on the attached real property. In the meantime, the property had been sold by the corporation to a third person, who took title with actual knowledge of the attachment lien. When it was later discovered that the person served was not in fact an officer, a motion was made to vacate the judgment on the ground of lack of proper service of process. In explaining the posture of the case the Supreme Court stated (at p. 777): "Although this error [service of the wrong person] might have served to vacate the judgment and the subsequent levy of execution, defendants still faced the encumbrance of the prejudgment attachment. With our decision in *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13], the prejudgment attachment was also subject to attack. The vacating of the judgment and liens, then, would have cleared the title; Jefferies would have been freed of the indemnity, and plaintiff would have had only a cause of action against a judgment-proof corporation." The court then proceeded to analyze the precise issue before it, which involved the validity of the service of summons, and held that such service was valid by virtue of ostensible authority; it allowed the judgment, along with the attachment and execution liens, to stand.

We read the *Pasadena Medi-Center Associates* case as holding that the *Randone* case is not to be applied retroactively so as to nullify prior attachment procedures which have culminated in judgment liens. Had the Supreme Court felt otherwise, while refusing to set aside the judgment for improper service, it could and would have set aside the attachment and judgment liens, both of which (as with the case at bench) preceded the *Randone* decision. Instead, the court expressly recognized that before the attachment could be held invalid under *Randone,* it was essential that the judgment be reversed.[3]

■ Plaintiffs have directed our attention to the well-known rule that an appellate court may affirm a judgment on the basis of any theory of law which supports it, and that if the *decision* of the lower court is right, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the lower court reached its conclusion. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 226, pp. 4215-4216.) ■ They urge us to affirm the judgment on the second ground raised in the lower court (referred to hereinabove) which was in effect rejected by the trial court. Plaintiffs again make the same argument on appeal that they made to the trial court, that the documents filed in support of the motion for partial summary judgment showed no factual issue as to date of passage of title. They urge that title passed for purposes of this case, on April 29, 1970, when they paid the purchase money to Wilson. The record does not support this contention. The declarations and other documents, both pro and con, filed with respect to the motion leave a conflict amounting to an issue of fact as to when "title" (either equitable or legal) passed. The lower court recognized this by remarking at the first hearing on the motion on June 27 that fact questions existed for trial on the issue of passage of title. The trial court reiterated this in the hearing on the motion to reconsider its first denial of the summary judgment. *Iknoian* v. *Winter, supra,* and *Davis* v. *Perry, supra,* do not succor plaintiffs on appeal any more than they did in the lower court. As above noted, they establish a rule that a creditor's lien (here defendant's) applies only to whatever interest the debtor (here Wilson) has in the property, but the rule presupposes a judicial determination of the extent of such interest, which in the instant case can

---

[3]We note that in *EAC Credit Corp.* v. *Bass* (1971) 21 Cal.App.3d 645, 655 [98 Cal.Rptr. 681], the First Appellate District refused to give retroactive effect to the decision in *Blair* v. *Pitchess* (1971) 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206], which held the claim and delivery statute unconstitutional on the same theory as was later relied on in *Randone.*

only take place after a trial of the factual issues relating to the transfer of title.

The summary judgment is reversed and the cause is remanded to the trial court for trial on the merits.[4]

Paras, J., and Evans, J., concurred.

A petition for a rehearing was denied August 4, 1976, and respondents' petition for a hearing by the Supreme Court was denied October 6, 1976.

---

[4]In reaching our decision in this case we have not been unmindful of the recent decision of the California Supreme Court in the case of *Becker* v. *Lindsay* (1976) 16 Cal.3d 188 [127 Cal.Rptr. 348, 545 P.2d 260]. Based upon supplemental letter briefs filed by the parties at our request, and upon our own study of the *Becker* case, we have concluded that it has no application to any issue in the instant case for two reasons: (1) *Becker* involves no issue of retroactivity of the *Randone* decision, and (2) *Becker* applies only to cases in which a declaration of homestead is involved. (See 16 Cal.3d at p. 193, fn. 6, and p. 194, fn. 7.)