[Civ. No. 68547. Second Dist., Div. Five. Nov. 8, 1983.]

SARBOUHI MARTIN et al., Plaintiffs and Respondents, v.
HRATCH ABOYAN et al., Defendants and Appellants.

**Counsel**

Flores, Cervantes & Luna and Kenyon F. Dobberteen for Defendants and Appellants.

Aberson, Lynes & Gotcher and William H. Lynes for Plaintiffs and Respondents.

**Opinion**

**HASTINGS, J.**—In this case we are asked to decide for the first time whether a homestead exemption must be protected by following the procedural provisions of Code of Civil Procedure section 484.070, subdivision (a)[1] in prejudgment attachment proceedings.

On October 22, 1981, Sarbouhi Martin and Hamazasb Martin (the Martins), plaintiffs and respondents, filed a complaint for breach of contract against Hratch Aboyan and Marguerite Aboyan (the Aboyans), defendants and appellants. Shortly thereafter, the Martins filed an application for order

---

[1]From January 1, 1977 until July 1, 1983, section 484.070, subdivision (a) provided: "If the defendant claims that the property described in the plaintiff's application, or a portion of such property, is exempt from attachment, the defendant shall claim such exemption as provided in this section. If the defendant fails to make such claim or makes such claim but fails to prove that the property is exempt, he may not later claim such exemption except as provided in Section 482.100."

Unless otherwise stated all code sections refer to California Code of Civil Procedure.

for issuance of writ of possession (§ 484.010 et seq.). The Aboyans were personally served with notice of the application on October 26, 1981. This notice, as required, informed them of their right to claim exemptions, and warned them that the claim had to be filed and served at least five days before the hearing. The application sought a writ of attachment against a number of items of property including the residence of the Martins at 1364 East Acacia, Glendale, California (the property).

On December 11, 1981, the Aboyans recorded a declaration of homestead on the property.

The hearing was held on December 17, 1981. No claim of exemption was filed by the Aboyans prior to the hearing. After the hearing, the court ordered the issuance of a writ of attachment on the property and the Los Angeles County Sheriff levied the writ.

Six months after the hearing the Aboyans filed a motion to discharge the writ of attachment claiming that the property was exempt from the levy because they had recorded the declaration of homestead more than five days prior to the attachment hearing and there was no equity over and above the recorded liens and the exemption. The court denied their motion.

CONTENTIONS OF THE PARTIES

The Martins contend that the California attachment law, section 481.010 et seq., enacted after the landmark decision of *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13], established for the first time comprehensive and exclusive procedures covering prejudgment attachments and exemptions. Persons claiming homestead exemptions are required to comply with the procedural provisions of the new law. Other statutory procedures pertaining to homestead exemptions were superseded by the new law.

The Aboyans argue that the Legislature did not intend the new law to supersede the other statutory homestead exemption procedures, and particularly Civil Code section 1240 which provides: "The homestead is exempt from execution or forced sale, except as in this title provided." Section 1241 of the Civil Code recites the exceptions referred to in section 1240 and does not include an exception for writs of attachment. The Aboyans argue that for public policy reasons, homestead exemptions are scrupulously protected and cannot be overturned absent clear legislative mandate. The Aboyans cite *Becker* v. *Lindsay* (1976) 16 Cal.3d 188, 193 [127 Cal.Rptr. 348, 545 P.2d 260], where our Supreme Court stated, "In resolving any ambiguity, this court must heed the salubrious policy of interpreting the

provisions of the homestead exemptions liberally for the protection of the homesteaders from the loss of their homes."

## DISCUSSION

During the time period pertinent to this case, section 484.070 provided: "If the defendant claims that the property described in the plaintiff's application, or a portion of such property, is exempt from attachment, the defendant shall claim such exemption as provided in this section. If the defendant fails to make such claim . . ., he may not later claim such exemption except as provided in Section 482.100."[2] If this section applies to homesteaded property, the trial court was correct in not quashing the writ of execution. The property was described in the Martins' application for a writ of attachment, yet the Aboyans did not claim an exemption for the property five days before the hearing. They could not later obtain the exemption pursuant to section 482.100 because they could not demonstrate a change in circumstances as required by the section.

Historically, under California statutory and decisional law, a writ of attachment did not become a lien against a homestead prior to entry of a final judgment. If a levy of a writ of attachment was made against a defendant's homestead, the defendant could move for an order discharging the levy. In the leading case of *Becker v. Lindsay, supra,* 16 Cal.3d 188, the plaintiff filed an action on an unsecured debt on March 2, 1971, and on March 5, 1971, caused a writ of attachment to be recorded against the defendant's house. One week later the defendant recorded a declaration of homestead. Plaintiff's judgment was entered on April 27, 1971, and on October 17, 1973, pursuant to defendant's motion, the trial court quashed the levy. The issue before the court was whether a declaration of homestead recorded before judgment defeats a prior attachment lien. The court held that it did and stated, at page 193: "Although an attachment is certainly an encumbrance within many contexts, proper attention to the semantic nuances of section 1241(4) suggests that it is not an 'encumbrance executed and recorded' for the purposes of that section. This conclusion commands the unanimous endorsement of the commentators.

"Witkin in 5 California Procedure (2d ed. 1971) observes that a homestead declaration 'defeats a levy of execution where there was no judgment lien prior to the declaration.' (P. 3417.) 2 Bowman, Ogden's Revised Real Property Law (1975) asserts that '[w]hen a declaration of homestead is recorded before a levy of attachment or after levy but before recording of

---

[2]Section 482.100 permits a defendant to claim an exemption where there is a change in circumstances.

an abstract of judgment, the attachment is defeated to the extent of the homestead exemption.' (P. 1007.) 2 Miller & Starr, Current Law of California Real Estate (1968) adds to the consensus, concluding that 'a declaration of homestead upon property after an attachment lien is levied but before a judgment is recorded has priority over the judgment.' (P. 167.) Jackson, in California Debt Collection Practice (Cont.Ed.Bar 1968) concurs: 'A validly declared homestead . . . is effective against any levy under a writ of attachment, even though the attachment is prior to the recordation of the homestead.' (P. 225.)

"At the very least, the wording of section 1241(4) renders it doubtful that the section subordinates a homestead to an attachment lien. In resolving any ambiguity, this court must heed the salubrious policy of interpreting the provisions of the homestead exemptions liberally for the protection of the homesteaders from the loss of their homes." (Citations and fn. omitted.)[3]

The Aboyans contend *Becker* v. *Lindsay* correctly states the law today and a defendant who has filed a valid homestead prior to entry of judgment can at any time move to discharge the writ of attachment or move to quash the levy. The Martins counter by stating that *Becker* v. *Lindsay* was decided before the enactment of the current California attachment law, and is therefore inapposite as the new law superseded the previous exemption procedures.

Much has been written about the history of California's attachment law, effective January 1, 1977, after a hastily drawn and passed interim law. The need for such a law was spelled out in *Randone* v. *Appellate Department, supra,* 5 Cal.3d 536. We will refer to portions of the law's history only where it is pertinent to this opinion. Readers who wish to examine in depth the legislative history can do so in the footnoted references.[4]

■  The California attachment law concededly is very comprehensive. Its language, however, does not specifically or impliedly revoke or supersede the homestead exemption procedures in existence. The Martins, in arguing that section 481.010 et seq. establishes the exclusive procedures covering prejudgment attachments and exemptions, rely on the legal history of the legislation, its comprehensive wording and the fact that on its face it *appears* to include most, if not all, types of attachment procedures. We

---

[3]A writ of attachment may be valid, however, as to a portion of the property if the fair market value of the property exceeds the amount of the homestead and all liens and encumbrances. (*Southern Pacific Milling Co.* v. *Milligan* (1940) 15 Cal.2d 729 [104 P.2d 654].)

[4](11 Cal. Law Revision Com., Rep. (1973) p. 515 et seq.; *California's New Attachment Law: Problems in Interpretation* (1976) 23 UCLA L.Rev. 792; Fainer, *The Prejudgment and Attachment Remedy in California* (1975) 51 L.A. Bar Bull. 95.)

have read the legislative history and the pertinent provisions of the law and we are satisfied that the Legislature did not include homesteaded property within the provisions of section 484.070, subdivision (a) and the writ of attachment must be quashed if a hearing determines that there is no equity in the property subject to attachment.[5]

Attachment is a harsh remedy because it causes the defendant to lose control of his property before the plaintiff's claim is adjudicated. *Randone v. Appellate Department, supra,* 5 Cal.3d 536, was a frontal attack on the constitutionality of California's prejudgment attachment remedy. The court found that the scheme violated procedural due process in two respects. First, in almost all contract actions, the existing statutes allowed attachment without prior notice and without any type of hearing. Second, the existing statutes allowed attachment of a defendant's necessities of life, although a quick postattachment procedure for the release of some property of this sort was available. The court reasoned that procedural due process required a final adjudication of the plaintiff's claim before any seizures of necessities, however temporary. (*California's New Attachment Law: Problems and Interpretation* (1976) 23 UCLA L.Rev. 792.)

In reading the history of the legislation, it is clear that the Legislature was concerned primarily with the seizure of property *before* due process safeguards. This concern, however, was not so obvious or pressing with homesteaded property because of the strong protection already afforded it under existing law. A defendant could file a homestead and protect his or her property any time prior to entry of the actual judgment.[6] Recordation was a matter of public record. Procedural due process was not required to protect the property. There is no pointed reference to homesteaded property in the California Law Revision Commission's introduction to the legislation or in printed historical comments on the new attachment law. It is true that a great deal of attention and language was given to prevent seizure of a defendant's property required for necessities of life but any fleeting mention of a homestead was not done in a manner that would suggest that the new law was superseding existing exemption procedures.[7]

---

[5] We emphasize that we are addressing only *prejudgment* attachment remedies, whereby a plaintiff can cause a defendant's property to be seized as security for a judgment which might be rendered later. It is to be distinguished from execution, which is the seizure and sale of the defendant's property after judgment.

[6] If the Martins' argument was valid, a person who has not recorded a homestead before a section 484.070 hearing would be in a more advantageous position than one who had. The new law does not prevent the filing of a homestead after the hearing and before the judgment. In other words, the Martins concede the Aboyans would have prevailed if they had filed their homestead after the hearing.

[7] Section 487.020 lists property exempt from attachment. A comment to the section in 11 California Law Revision Commission Report (1973) page 593, states that subdivision (a) of section 487.020 "embraces not only the exemptions provided in the 690 series of the Code

Our conclusion is supported by an amendment to section 484.070 effective July 1, 1983. Subdivision (a) now provides: "If the defendant claims that the *personal* property described in the plaintiff's application . . . is exempt from attachment, the defendant shall claim the exemption as provided in this section. If the defendant fails to make the claim or makes the claim but fails to prove that the *personal* property is exempt, defendant may not later claim the exemption except as provided in Section 482.100." (Italics added.) Prior to this amendment subdivision (a) referred to all property. In commenting on the amendment, the Senate Daily Journal states, "Subdivision (a) of section 484.070 is amended to make clear that the defendant is not required to claim an exemption for real property at the hearing on issuance of the right to attach order and writ of attachment. . . . Consequently, if the defendant's real property dwelling is sought to be attached, a failure to claim an exemption for it does not constitute a waiver of the exemption. . . ." (Sen. Daily J., (1981-1982 Reg. Sess., June 24, 1982) p. 11399.) This was a clarification of the section, not a change. Obviously, there was confusion concerning its wording on the very issue before us. Now it is clear the Legislature did not intend that noncompliance with section 484.070, subdivision (a) prior to July 1, 1983, would act as a waiver to a defendant's homestead rights.

The action of the trial court is reversed. The matter is remanded for a new hearing on the motion to discharge the writ of attachment and such further action consistent with this opinion.

Stephens, Acting P. J., and Ashby, J., concurred.

---

of Civil Procedure but also homesteads, spendthrift trusts, and any other special exemptions provided by law."