[No. B037113. Second Dist., Div. Seven. Oct. 18, 1989.]

ROBERT M. PECK, as Trustee, etc., et al., Plaintiffs and Appellants, v.
EARLE H. HAGEN, Defendant and Respondent.

**COUNSEL**

Herbert Murez for Plaintiffs and Appellants.

Kroll & Tract and John D. Monte for Defendant and Respondent.

**OPINION**

**JOHNSON, J.**—Appellants Robert M. Peck, as trustee of the Robert M. Peck, M.D., Inc. Defined Benefit Pension Trust, and Ruth R. Peck (collectively referred to as Peck) appeal from an order quashing their levies of execution. We conclude the trial court erroneously quashed the levies of execution rather than resolving any issues of priority through the appropriate statutory scheme. The judgment is reversed.

### STATEMENT OF FACTS AND PROCEEDINGS BELOW

On October 1, 1986, Peck commenced an action against Stephen Henry (Henry) and various defendants for breach of contract and money had and

received. Peck filed writs of attachment against real property held by Henry (the property) on October 14, 1986. On October 31, 1986, the writs of attachment, along with notices of attachment and the right to attach orders, were recorded in Los Angeles County.

The property was encumbered by various liens in addition to Peck's writs of attachment. Great Western Bank held a first trust deed and Wilshire Bank held a second trust deed on the property. A third lien was held by Henry's wife. Pursuant to a marital settlement agreement between Henry and his wife, Susie, dated December 27, 1981, Henry received title to the property. In exchange, Susie received, inter alia, a promissory note in the amount of $305,000 secured by various trust deeds, including one on the property. The trust deed was recorded on July 6, 1982.

On November 18, 1986, Henry executed a document entitled "General Assignment" whereby he assigned assets to Earle Hagen for the benefit of Henry's creditors. This assignment included the property.

To avoid foreclosure on the property by Great Western Bank, the senior lienholder, Hagen and the various lienholders, including Peck, agreed to permit Hagen to sell the property free of encumbrances and pay the amounts owing to Great Western Bank and Wilshire Bank. The remaining proceeds from the sale were then to be deposited in bank accounts with the lienholders maintaining their identical lien positions against these proceeds.

In accordance with this agreement, in August 1987, the property was sold, the banks repaid, and the remaining proceeds deposited into various bank accounts. Peck's attachments were then transferred to the bank accounts.

On April 10, 1987, Hagen moved to dissolve Peck's attachments on the property arguing the attachments were terminated pursuant to Code of Civil Procedure section 493.030, subdivision (a) by the assignment of Henry's assets to Hagen. Peck opposed the motion, arguing the assignment was not a general assignment within the meaning of Code of Civil Procedure section 493.010.[1] On February 2, 1988, the trial court denied Hagen's motion. Hagen did not appeal from this order.

---

[1] Section 493.010 provides: "As used in this chapter, 'general assignment for the benefit of creditors' means an assignment which satisfies all of the following requirements: [¶] (a) The assignment is an assignment of all the defendant's assets that are transferable and not exempt from enforcement of a money judgment. [¶] (b) The assignment if for the benefit of all the defendant's creditors. [¶] (c) The assignment does not itself create a preference of one creditor

On April 20, 1988, Peck obtained judgments against Henry totalling $195,904.11. Peck than obtained writs of execution to levy on the accounts containing the property's sale proceeds.

The marshal then levied on the bank accounts. However, the levies apparently exceeded the amount of the judgments and Peck's attorney instructed the marshal to release any levy in which Peck did not have an interest and any funds over the amounts necessary to satisfy the writs of execution.

On June 27, 1988, Hagen moved ex parte to quash Peck's levies. Susie Henry joined in the motion to quash.[2] The trial court granted the motion, concluding the levies were improper since the priority of competing claims to the proceeds had yet to be resolved. Peck timely appealed.

## DISCUSSION

## I. THE TRIAL COURT ERRONEOUSLY QUASHED THE LEVIES OF EXECUTION.

There is no dispute Peck complied with the statutory requirements necessary to levy on the bank accounts. Rather the questions raised both below and on appeal involve whether (1) the levies were improper because of unresolved questions involving competing liens against the accounts, and (2) Henry's assignment to Hagen operates to bar Peck from levying on the bank accounts. As we discuss below, the answer to both of these questions is "no" and, thus, the order quashing the levies must be reversed.

### A. *A Party May Levy on Personal Property Although the Priority of Various Lienholders Has Not Been Resolved.*

Hagen argued, and the trial court agreed, the bank accounts could not be levied upon until the priority of liens against the funds was resolved. This is incorrect.

Both Hagen and the trial court correctly identified a potential problem with permitting Peck to obtain possession of the levied money without

---

or class of creditors, but the assignment may recognize the existence of preferences to which creditors are otherwise entitled."

Section 493.030, subdivision (a) provides: "The making of a general assignment for the benefit of creditors terminates a lien of a temporary protective order or of attachment if the lien was created within 90 days prior to the making of the general assignment."

All subsequent statutory references are to the Code of Civil Procedure unless specified otherwise.

[2] Hagen also filed statutory claims of exemption. (See § 703.010 et seq.) These claims were not heard since the levies were quashed.

resolving the priority of the various liens against Henry. However, as Peck properly notes, quashing the levies is not the proper mechanism for resolving the priority issue.

A party may levy on property even where there are competing liens and the priority of these liens has yet to be resolved. Under such circumstances, the Legislature has provided two statutory methods for resolving the priority issue. First, where there is a sale or collection by a levying officer, an interested party asserting a claim to the property may notify the levying officer of the competing claim pursuant to section 701.830. The levying officer will then deposit the levied funds with the trial court. (§ 701.830, subd. (a).) Following a noticed motion, the trial court will determine the priority of the claims and order the proper distribution of the proceeds. (§ 701.830, subd. (b); see 8 Witkin, Cal. Procedure (3d ed. 1985) Enforcement of Judgment, § 153, p. 144.)

Alternatively, under section 720.210 et seq., a third party claimant such as Susie Henry, the alleged senior lienholder, may file a claim with the levying officer setting forth her security interest in the property. The third party claimant may then petition for a hearing to determine the validity of the third party claim and the correct disposition of the property. (§§ 720.210, subd. (a), 720.220, 720.230, 720.310; see 8 Witkin, Cal. Procedure, *supra,* Enforcement of Judgment, § 364 et seq.)

In either instance, the levy is not quashed as a condition to resolving the priorities. (§§ 701.830, subd. (a) ["If there are conflicting claims to all or a portion of the proceeds of sale or collection known to the levying officer before the proceeds are distributed, the levying officer may deposit with the court the proceeds . . ."]; 720.210, subd. (a) ["Where personal property has been levied upon under a writ of attachment, a writ of execution, . . ."].) Thus, the trial court erred in quashing the levies on this basis.

B. *Henry's Assignment to Hagen Does Not Bar Peck From Levying on the Bank Accounts.*

Hagen also argues the trial court's order was proper because the assignment by Henry to Hagen was an assignment for the benefit of creditors within the statutory definition of section 493.010 which foreclosed Peck's ability to execute against the bank accounts. This is incorrect. As Peck notes, the trial court's previous order denying Hagen's motion to terminate the attachments is res judicata on whether there was a general assignment for the benefit of creditors within section 493.010.

A final judgment or order has the effect of res judicata, even if it is incorrect, if the merits of the claim are tried and determined or might have

been urged, but were not, by one of the parties. (*Hight* v. *Hight* (1977) 67 Cal.App.3d 498, 502-503 [136 Cal.Rptr. 685]; see *Signal Oil etc. Co.* v. *Ashland Oil etc. Co.* (1958) 49 Cal.2d 764, 777 [322 P.2d 1]; *In re Marriage of Anderson* (1981) 125 Cal.App.3d 553, 560-561 [178 Cal.Rptr. 117].) The doctrine is applied to a particular case when all of the following conditions are met: (1) The issue in the prior adjudication is identical to the one in the present action; (2) there was a final judgment or order on the merits; (3) the party against whom the doctrine is applied is the same party or in privity with the party to the prior adjudication. (See *County of Los Angeles* v. *Superior Court* (1985) 169 Cal.App.3d 1095, 1100-1101 [215 Cal.Rptr. 699].)

■ There is no dispute the first and third conditions are met here. The sole basis for Hagen moving to dissolve the attachments was that a general assignment for the benefit of creditors within the statutory definition had occurred. Peck's opposition disputed such an assignment had been made. Thus, the issue was squarely presented and ultimately resolved by the trial court in Peck's favor.

Hagen initially argued, without any supporting authority, the order denying his motion to quash the attachments was an interim, rather than final order and, therefore, there can be no res judicata effect. In his petition for rehearing, Hagen argues for the first time the order was an interim order because it was not an order refusing to discharge an attachment. We disagree.

■ An order is deemed final if it is directly appealable. (*Rebco Development, Inc.* v. *Superior Court* (1977) 67 Cal.App.3d 13, 16 [136 Cal.Rptr. 351]; accord *Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1013 [183 Cal.Rptr. 594]; compare *Harth* v. *Ten Eyck* (1941) 16 Cal.2d 829, 832 [108 P.2d 675] [final order not res judicata if trial court empowered to reconsider order within statutory period].) Section 904.1, subdivision (e) provides an order "discharging or refusing to discharge an attachment . . ." is appealable.

■ Hagen contends an order discharging or refusing to discharge an attachment only includes motions which claim the attachment was improperly or irregularly issued. This is incorrect.

■ While an attachment may be discharged if it is improperly or irregularly issued (see *Turner* v. *Evers* (1973) 31 Cal.App.3d Supp. 11, 16 [107 Cal.Rptr. 390], disapproved on other grounds in *Javorek* v. *Superior Court* (1976) 17 Cal.3d 629, 641 [131 Cal.Rptr. 768, 552 P.2d 728]; *Islander Yachts, Inc.* v. *One Freeport 36-Foot Vessel* (1985) 173 Cal.App.3d 1081,

1086, fn. 6 [219 Cal.Rptr. 654]), these are not the sole grounds for discharging the attachment. An attachment is also deemed discharged where it is terminated by operation of law. (See, e.g., *Martin* v. *Aboyan* (1983) 148 Cal.App.3d 826, 831-832 [196 Cal.Rptr. 266] [attachment is discharged where real property exempt because of valid declaration of homestead]; *Arcata Publications Group* v. *Beverly Hills Publishing Co.* (1984) 154 Cal.App.3d 276, 280 [201 Cal.Rptr. 223] [attachment is discharged where party's failure to properly extend attachment lien resulted in statutory termination of lien]; *Commercial & Farmers Nat. Bk.* v. *Hetrick* (1976) 64 Cal.App.3d 158, 165 [134 Cal.Rptr. 285] [attachment is discharged where party substitutes undertaking for attached property]; *Henderson* v. *Drake* (1953) 42 Cal.2d 1, 3-4 [264 P.2d 921] [attachment is discharged where plaintiff fails to comply with statutory requirements of section 553 [now § 489.410] following judgment in favor of defendant].)

■ Here, Hagen argued for the termination of the attachment and the release of the attached property because the general assignment for the benefit of creditors statutorily terminated the attachment. He therefore sought an order to discharge the attachment and the trial court's denial of that motion was directly appealable. (*Gibbs* v. *Haight, Dickson, Brown & Bonesteel* (1986) 183 Cal.App.3d 716, 720 [228 Cal.Rptr. 398].) Thus, it was a final order and not subject to collateral attack. (See *Michael* v. *Burge* (1959) 176 Cal.App.2d 128, 130 [1 Cal.Rptr. 183] [appellants barred from collaterally attacking order denying motion to dissolve attachment where they failed to appeal from the order]; accord *Title G. & T. Co.* v. *Stahler* (1936) 15 Cal.App.2d 239, 241 [59 P.2d 515].)

Hagen further contends the trial court's order was merely intended to preserve the status quo. However, the trial court was not entitled to deny Hagen's motion on this basis. Under section 493.030, the trial court was required to dissolve the attachments provided the statutory requirements were met. We may fairly presume the trial court acted in accordance with the law when denying the motion. If not, Hagen should have appealed. Having failed to do so, the trial court's resolution of this issue is res judicata.

■ Moreover, even if we agreed the trial court's denial of Hagen's motion is not res judicata as to this issue because the order is merely interim, rather than final, Hagen nonetheless is bound by the denial of his motion. "Parties to an action are bound by the trial court's interim rulings unless the rulings are reversed upon trial court reconsideration or appellate review. [Citations.]" (*Ziller Electronics Lab GmbH* v. *Superior Court* (1988) 206 Cal.App.3d 1222, 1228 [254 Cal.Rptr. 410].) Here, Hagen failed to

either seek appellate review or move for reconsideration by the trial court.[3] He therefore is bound by the order denying his motion to dissolve the attachments.

Since the trial court determined Henry's assignment to Hagen was not an assignment for the benefit of creditors within section 493.010's definition, the order quashing the levies cannot be justified on the grounds the original attachments were dissolved pursuant to section 493.030.[4]

Nor can Hagen successfully argue the order was proper to preserve the integrity of the state's insolvency "scheme." Absent a general assignment for the benefit of creditors, this nebulous and largely undefined "scheme" to which Hagen refers would not be invoked.

Similarly, it is unnecessary to consider whether a general assignment for the benefit of creditors constitutes an interest of a trust beneficiary and, therefore, not subject to execution since there has been no general assignment here. (§ 699.720, subd. (a)(8).) Regardless, section 699.720 would appear not to apply.

Section 699.720, subdivision (a)(8) prohibits the levy of execution against a judgment debtor's interest, as a beneficiary, in a trust. (See 16 Cal. Law Revision Com. Rep. (1982) p. 1322; § 709.010.) As Hagen concedes in his brief, Henry is not a beneficiary of any trust estate created by his assignment to Hagen. Thus, section 699.720's exemption would not apply.

In sum, the trial court's denial of Hagen's motion to dissolve Peck's attachments is res judicata as to whether the assignment to Hagen was an assignment for the benefit of Henry's creditors. Since the trial court concluded no such assignment was made, Hagen is barred here from attempting to argue any assignment justified the trial court's order quashing the levies of execution.

---

[3] Hagen's motion to quash the levies could not be deemed a motion for reconsideration since he never challenged the propriety of the earlier order.

[4] Hagen's reliance upon *Scoville* v. *Anderson* (1901) 131 Cal. 590 [63 P. 1013], is wholly misplaced. In *Scoville,* the Supreme Court discussed a predecessor to section 493.030 which provided attachments on a judgment debtor's property are dissolved if made within a certain time period of an assignment for the benefit of creditors. (*Id*. at p. 594.) The Supreme Court created no independent basis for staying execution of levies or dissolving writs of attachment. *Scoville,* of course, does not apply here since, as we discussed herein, there has been no general assignment for the benefit of creditors which would trigger the dissolution of attachments provided in section 493.030.

## DISPOSITION

The order quashing appellants' levies of execution is reversed. Appellants are to recover their costs on appeal.

Lillie, P. J., and Woods (N. F.), J., concurred.

A petition for a rehearing was denied November 13, 1989, and respondent's petition for review by the Supreme Court was denied January 17, 1990.