In re H & S TRANSPORTATION
COMPANY, INC., Debtor.

Bankruptcy No. 381–02803.

United States Bankruptcy Court,
M.D. Tennessee.

Aug. 9, 1984.

C. Bennett Harrison, Jr., Nashville, Tenn., trustee for H & S Transportation Company, Inc.

Stephen M. Miller, Nashville, Tenn., trustee for Inland Transportation Company.

William R. O'Bryan, Jr., Nashville, Tenn., for Economy Boat Store and Mid-Stream Fueling Service Company.

E. Franklin Childress, Jr., Nashville, Tenn., Asst. U.S. Atty.

Mark A. Patterson, Nashville, Tenn., for R & R Services, Inc.

Paul B. Lee, St. Louis, Missouri, for St. Louis Fuel & Supply Company, Inc.

William Thomas, Memphis, Tenn., for Mississippi River Systems Marine.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on a proposal by the trustee for the debtor, H & S Transportation Company, Inc., to distribute funds from the sale of the M/V SALLY BARTON to secured creditors. On January 4, 1984, the court heard argument on five objections filed by secured creditors against the plan proposed by the trustee.[1] The issue presently before the court is whether the trustee may, pursuant to either 11 U.S.C. § 544(a)(1) (West 1979) or 11 U.S.C. § 545(2) (West 1979), avoid prepetition maritime lien claims for necessaries created pursuant to 46 U.S.C. § 971 (West 1979) totaling $304,005.16.[2]

Upon consideration of the evidence presented, briefs of the parties, applicable authority and the entire record, this court concludes that the trustee for the debtor may not avoid prepetition maritime liens which attached to the M/V SALLY BARTON and were created pursuant to 46 U.S.C. § 971 (West 1979). Since it appears that the parties have agreed to rank the maritime liens in order of priority by use of the "calendar-year rule", the court will further order a distribution to the maritime lien claimants based on the calendar-year rule.[3]

The following shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

On September 10, 1981, the debtor, H & S Transportation Company, Inc., filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code. On October 22, 1982, the trustee for both the debtor and for Inland Transportation Company, Inc. (hereinafter referred to as "Inland"), served notice on all creditors of his intention to sell free and clear of all liens both a towboat owned by the debtor, the M/V

---

1. The January 4, 1984, hearing was part of a consolidated proceeding concerning the distribution of proceeds from the sale of two towboats, the M/V SALLY BARTON owned by the H & S Transportation Company, Inc., and the M/V CLYDE DUNLAP owned by the Inland Transportation Company. On March 12, 1984, this court entered a memorandum decision disposing of both the administrative claim objections and the objections concerning unfiled proofs of claim for seaman's wages.

2. Although this same issue has arisen concerning distributions of funds received from the sale of M/V CLYDE DUNLAP, the court has continued hearings on issues relating to class IV prepetition claims against the proceeds of the M/V CLYDE DUNLAP. The resolution of a case against the M/V CLYDE DUNLAP presently pending in federal district court may render these issues moot.

3. The court notes that the traditional rule of priority within a class of maritime liens is known as the "inverse order" rule which gives priority to the claims in the order of their attachment with the last in time being the first in right. *Ramsay Scarlett & Co., Inc. v. SS Koh Eun*, 462 F.Supp. 277 (E.D.Va.1978). Due to the harsh results of this rule, a number of special rules have developed. G. GILMORE & C. BLACK, LAW OF ADMIRALTY § 9–2, at 588 (2nd Ed.1975). One of these special rules, the calendar-year rule, provides that liens of the same class which accrued in the same calendar year would share in the proceeds of the vessel pro rata. *Id.*, at § 9–64 at 747.

SALLY BARTON, and a towboat owned by Inland, the M/V CLYDE DUNLAP. After hearing argument from a number of creditors objecting to the proposed sale, the court ordered that the trustees would be allowed to sell the tugboats free and clear of all liens, with the proceeds of the sales to be segregated by the trustee and held subject to the liens and interest claims of all entities, in their relative order of priority. Any entity claiming a lien or interest in the proceeds of the sale of the tugboats was required to file a proof of claim with the clerk of the bankruptcy court no later than 4:30 p.m. on December 17, 1982. After the sale of the M/V SALLY BARTON, proceeds in the amount of $159,625.19 were available for distribution to claimants and interest holders.

On July 26, 1983, the trustee for the debtor proposed a plan of distribution of the proceeds obtained from the sale of the M/V SALLY BARTON. The prepetition maritime lien claimants have filed objections to the trustee's proposed plan.

### I.

■ The trustee asserts that he is entitled, pursuant to the "strong-arm" powers provided him under 11 U.S.C. § 544(a)(1) (West 1979) to avoid prepetition maritime liens created under 46 U.S.C. § 971 (West 1979). Section 544(a)(1) affords the bankruptcy trustee with all of the powers and rights available under applicable law to a "... hypothetical creditor of the debtor who, as of the commencement of the case, had completed the legal (or equitable) processes for perfection of a lien upon all of the property available for the satisfaction of his claim against the debtor." 4 COLLIER ON BANKRUPTCY § 544.02, at 544-5 (15th Ed.1984).[4] In order to prevail under a § 544(a)(1) claim, the trustee must

establish that a judicial lien obtained at the time of the commencement of the case would, under applicable law, have priority over a prepetition claimant. *Bratcher v. Commissioner of Internal Revenue Service (In re Lambdin)*, 33 B.R. 11, 13 (Bankr.M.D.Tenn.1983); *McAllester v. Aldridge (In re Anderson)*, 30 B.R. 995 (M.D. Tenn.1983); *Lancaster v. Hurst*, 27 B.R. 740 (Bankr.E.D.Tenn.1983). *See also, Ganje v. Telford (In re Rhine)*, 22 B.R. 42, 43 (Bankr.S.D.1982); *Farrington v. O'Reilly Automotive, Inc. (In re TMIC Industrial Cleaning Co.)*, 19 B.R. 397, 399 (Bankr. W.D.Mo.1982).

■ The trustee has focused on the traditional rule of priority among maritime liens. The rule provides that among maritime liens of the same class the most recently obtained lien takes priority over all earlier created liens. The trustee has argued that he is entitled to assert the status of a claimant with a lien created under 46 U.S.C. § 971 at the time of the commencement of the bankruptcy proceeding; thus, he asserts that his hypothetical lien would, under the traditional rule of priority, take priority over all other prepetition maritime liens created under 46 U.S.C. § 971. In analyzing the argument raised by the trustee, the court must first examine the nature of the lien created under 46 U.S.C. § 971 and determine whether or not such a lien falls within the Code definition of a judicial lien.

The Bankruptcy Code defines a judicial lien in § 101(27) as any "... lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding; ..." Despite this broad definition, bankruptcy courts have held that "... not every lien or interest that is recognized by a

---

**4.** 11 U.S.C. § 544(a)(1) (West 1979) provides:

"(a) the trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, *a judicial lien* on all property on which a creditor on a simple contract could have obtained a *judicial lien,* whether or not such a creditor exists (emphasis added); ..."

court is necessarily a judicial lien." [5]  *In re Colby*, 23 B.R. 142, 143 (Bankr.W.D.Wis. 1982).  *See also Commonwealth National Bank v. United States (In re Ashe)*, 669 F.2d 105, 108 (3rd Cir.1982); *Rosen v. Alderson*, 34 B.R. 648, 649 (Bankr.E.D.Wis. 1983).

■ Under 46 U.S.C. § 971 any person furnishing repairs or necessaries to any vessel "shall have a maritime lien on the vessel." [6]  While courts have recognized that a maritime lien pursuant to 46 U.S.C. § 971 may be *enforced* by a judicial proceeding, they have held that the lien itself "arises automatically upon the furnishing of necessaries." *Riffe Petroleum Co. v. Cibro Sales Corp.*, 601 F.2d 1385 (10th Cir.1979).  *Accord Merchants National Bank of Mobile v. Dredge General G.L. Gillespie*, 663 F.2d 1338, 1345 (5th Cir. 1981); *Payne v. SS Tropic Breeze*, 423 F.2d 236, 240 (1st Cir.1970); *Mercereau v.*

*M/V Woodbine*, 551 F.Supp. 811 (N.D.Ohio 1982); *European-American Banking Corporation v. M/S Rosaria*, 486 F.Supp. 245, 255 (S.D.Miss.1978).  *See generally*, G. GILMORE & C. BLACK, LAW OF ADMIRALTY § 9–1 *et seq.* (2nd Ed.1975).  Thus, a maritime lien created pursuant to 46 U.S.C. § 971 is not obtained by any legal or equitable process or proceeding as required under 11 U.S.C. § 101(27), but is created automatically.  Once a prepetition maritime lien for necessaries has been created, this court can find no authority that would entitle the trustee, as a judicial lien claimant, to avoid such a maritime lien.  *Payne v. SS Tropic Breeze*, 423 F.2d 236 (1st Cir.1970); *Rayon Y. Celanese Peruana, S.A. v. M/V Phgh*, 471 F.Supp. 1363, 1369 (S.D.Ala. 1979); G. GILMORE & C. BLACK, LAW OF ADMIRALTY, § 9–1 *et seq.* (2nd Ed. 1975).[7]

**5.** 11 U.S.C. § 101(27) (West 1979) provides:
"(27) 'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceedings; ..."

**6.** 46 U.S.C. § 971 (West 1979) provides:
"Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, *shall have a maritime lien on the vessel*, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel." (Emphasis added.)

**7.** A line of analagous cases decided under the former Bankruptcy Act support this court's holding that a bankruptcy trustee may not, pursuant to his "strong-arm" powers, avoid liens created under the Federal Maritime Lien Act. These cases dealt with the issue of whether or not a bankruptcy trustee could avoid a shipowner's maritime lien on subfreights pursuant to § 67(a) of the former Bankruptcy Act.

The same operative language concerning the definition of judicial lien is used in both § 67(a) of the former Bankruptcy Act and § 101(27) of the Code.  Section 67(a)(1) states that "Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this Act by or against such person shall be deemed null and void ...".  Furthermore, the owner's maritime lien on subfreights, like the maritime lien on necessaries

created pursuant to 46 U.S.C. § 971, is created automatically upon the occurrence of a specific event.  Judicial process is necessary only for the enforcement of the lien.

In this line of cases, the courts held that the owner's maritime lien on subfreights was not a judicial lien and, accordingly, could not be avoided by the bankruptcy trustee.  Under the present Code, it is this court's opinion that these cases support the proposition that a maritime lien which is automatically created is not a judicial lien.  *Schilling v. A/S D/S Dannebrog*, 320 F.2d 628, 630 n. 2 (2nd Cir.1963) ("... to the extent that the owners have valid maritime liens, these are not liens 'obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this Act; under § 67 sub. a(1) of the Bankruptcy Act.); *Diana Compania Maritima, S.A. of Panama v. Subfreights of SS Admiralty Flyer,* 280 F.Supp. 607 (S.D.N.Y.1968); *In re North Atlantic and Gulf Steamship Company*, 204 F.Supp. 899, 905 (S.D.N.Y.1962) ("Thus the owner's lien on subfreights earned by a vessel, for hire due under its charter, which has been asserted by notice to a shipper from whom the earned subfreights are due, is not void under § 67, sub. a, even though obtained within four months before the filing of the petition and while the debtor was insolvent.  It is a maritime lien arising out of a maritime contract and is not "obtained by legal or equitable process or proceedings.  '... Section 67, sub. a does not necessarily void a lien which is sought to be *enforced* by legal or equitable process or proceedings.  Only liens which are "obtained' by

## II.

The trustee further asserts that he can avoid the prepetition maritime liens created under 46 U.S.C. § 971 pursuant to 11 U.S.C. § 545(2) (West 1979). Section 545(2) provides that the trustee may avoid any statutory lien on the property of the debtor which could be avoided by a bona fide purchaser that purchases such property on the date of the filing of the petition.[8] *Appel v. Steamboat Ski Corporation (In re Smythe)*, 32 B.R. 736 (D.Colo.1983). Since a maritime lien for necessaries is "... 'good against the world, including the good-faith purchaser of the ship without notice of the lien's existence," the trustee must establish a defense which would prevent the maritime lien claimants from asserting their lien against a bona fide purchaser. G. GILMORE & C. BLACK, *supra*, § 9–2, at 588.

The trustee argues that due to the equitable doctrine of laches he, as a bona fide purchaser, could prevent the prepetition maritime lien claimants from asserting their claims. Upon an examination of the doctrine of laches, as applied to maritime lien claimants, the court has determined that the prepetition maritime lien claimant would not be barred under the doctrine of laches and would have priority over a bona fide purchaser.

The doctrine of laches is an equitable defense which bars a party from asserting a claim. Two essential elements are necessary for the doctrine of laches to apply against a party seeking to enforce a federal maritime lien: (i) unreasonable delay and (ii) prejudicial harm. *Sasportes v. M/V Sol De Copacabana*, 581 F.2d 1204, 1210 n. 10 (5th Cir.1978); *United States v. American Gas Screw Franz Joseph*, 210 F.Supp. 581, 584–585 (D.Alaska 1962). *See*

*also Edmondson v. Mandrell*, 39 B.R. 455, at 459 (Bankr.M.D.Tenn.1984). The determination of whether laches has been established is within the sound discretion of the trial court. *Sasportes*, at 1210 n. 10; *Edmondson*, at 459.

In this case, the maritime liens in question attached to the M/V SALLY BARTON within one year of the filing of the bankruptcy petition. The court finds that, in the case at bar, one year is a reasonable period of time in which to enforce a maritime lien for necessaries and that unreasonable delay is not present.

As the court has noted above, a bona fide purchaser takes subject to pre-existing maritime liens created pursuant to 46 U.S.C. § 971. G. GILMORE & C. BLACK, LAW OF ADMIRALTY, § 9–1, at 588 (2nd Ed.1975). Thus, the pre-existing maritime liens which attached to the proceeds of the M/V SALLY BARTON may not be avoided by the trustee.

The court ORDERS that the trustee's objection to the prepetition maritime liens attaching to the proceeds of the M/V SALLY BARTON is DISMISSED. The court FURTHER ORDERS that the trustee distribute the remaining proceeds of the M/V SALLY BARTON in accordance with this court's order.

IT IS, THEREFORE, SO ORDERED.

---

legal or equitable process come within the purview of that section'"); *Council Commerce Corporation v. Sterling Navigation Co., Ltd.*, 31 B.R. 619 (S.D.N.Y.1983).

**8.** 11 U.S.C. § 545(2) (West 1979) provides:
"The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

(2) is not perfected or enforceable on the date of the filing of the petition against a bona fide purchaser that purchases such property on the date of the filing of the petition, whether or not such purchaser exists; ..."