[No. A020278. First Dist., Div. Four. Oct. 31, 1985.]

ISLANDER YACHTS, INC., Plaintiff and Appellant, v.
ONE FREEPORT 36-FOOT VESSEL, NO. 145 et al.,
Defendants and Respondents.

1082

COUNSEL

Gustlin & Golob, Gustlin, Golob & Bragin, Dennis E. Golob and Nancy G. Karlin for Plaintiff and Appellant.

David M. Zeff and Froneberger, Bonner & Zeff for Defendants and Respondents.

OPINION

**CHANNELL, J.**—Harbors and Navigation Code section 491[1] allows a vessel manufacturer to obtain a lien against a vessel in order to obtain payment

---

[1]All further references are to the Harbors and Navigation Code, unless otherwise indicated.

for the cost of construction. (§ 491, subd. (c); see Civ. Code, § 1180.) ■ ■■ ■ We find that appellant Islander Yachts, Inc., a boat manufacturer, is estopped from asserting this lien against the Freeport 36-foot yacht purchased by respondent Vincent Braun,[2] and that Braun's bona fide purchase of the yacht without knowledge of Islander's vessel lien would have extinguished that lien even if Islander had not been estopped from asserting it. We therefore affirm the judgment.

## I. FACTS

In late 1981, respondent Vincent Braun made arrangements with Sailboats/Sausalito, Inc., a vessel dealer, to purchase a sailboat. Appellant Islander Yachts, Inc. constructed the vessel in Irvine, California for sale to Sailboats/Sausalito.

On February 11, 1982,[3] Wells Fargo Bank, Braun's lender for the purchase of the vessel, requested Islander to issue a master carpenter's certificate. This document certified that Islander had transferred 100 percent of its interest in the vessel to Sailboats/Sausalito. Islander did not advise either Braun or Wells Fargo Bank that it intended to reserve any lien rights against the vessel.

On April 15, Islander delivered the vessel to Sailboats/Sausalito, which issued checks totaling $77,245 in payment to Islander. The following day, Sailboats/Sausalito transferred title to the vessel to Braun and Wells Fargo Bank and was paid $134,700 for it. Sailboats/Sausalito then stopped payment on the Islander checks and conveniently went out of business. Dick Levine, the owner of Sailboats/Sausalito, has disappeared.[4]

Seeking to obtain payment for the vessel, Islander filed a complaint on May 18, asserting a lien against the vessel pursuant to section 491 and attempting to foreclose on the lien.[5] Islander obtained a right to attach order on May 18 and an ex parte writ of attachment on the following day. On May 24, the sheriff seized the vessel.

---

[2]The respondents in this appeal are Vincent Braun and a Freeport 36-foot vessel, license No. 0370HB. Sections 490, 491 and 495 require that both the vessel and its owner be listed as defendants in the trial court. The lien asserted is against the vessel quasi in rem, not against Braun in personam. (*Jensen* v. *Dorr* (1910) 157 Cal. 437, 440-441 [108 P. 320]; see § 495.1; see also 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 187, pp. 572-573.)

[3]All dates refer to the 1982 calendar year, unless otherwise indicated.

[4]Sailboats/Sausalito, Inc. and Levine did file an answer on June 28 and their attorney did make an appearance on their behalf.

[5]Although the complaint names Braun, the vessel, Sailboats/Sausalito, Inc., and Levine as defendants, only Braun and the vessel remain as respondents on appeal.

Braun filed application for an order setting aside the right to attach order and quash the writ of attachment on June 2. On August 26, the trial court granted this application and entered an order setting aside its previous right to attach order, quashing the writ of attachment, and releasing the property.

On October 29, Braun filed a motion for summary judgment on the ground that Islander had no cause of action to foreclose on the lien because it had no right to obtain a lien against the vessel. An order for summary judgment and judgment itself was issued on December 10. ▮ ▮▮▮ Islander appeals from both the August 26 order setting aside the right to attach order and quashing the writ of attachment and the December 10 order and summary judgment.[6] The December 10 summary judgment was proper or not, depending on the correctness of the trial court's August 26 order. As such, this opinion will focus on the correctness of the earlier order.

## II. FEDERAL PREEMPTION

▮ First, Braun contends that federal law preempts Islander's lien. Although federal law provides for maritime liens to obtain payment for *repairs* made to vessels (46 U.S.C. § 971) and preempts state law to this extent (46 U.S.C. § 975), a federal maritime lien does not lie to obtain payment for *construction* of a vessel. (*New Bedford Co.* v. *Purdy* (1922) 258 U.S. 96, 99 [66 L.Ed. 482, 486, 42 S.Ct. 243]; *Matter of Mission Marine Assoc.,*

---

[6]Islander Yachts filed two notices of appeal. The first is an appeal from the August 26 order setting aside the May 18 right to attach order and quashing the May 19 writ of attachment. Notice of entry of the August 26 order was mailed September 14 and the notice of appeal was filed November 5. Although neither of the parties address the appealability of these orders, an order setting aside a right to attach order and quashing a writ of attachment appears not to be appealable. (See *International Typographical Union etc. Pension Plan* v. *Ad Compositors, Inc.* (1983) 142 Cal.App.3d 733, 735 [191 Cal.Rptr. 227] [denial of writ of attachment is not appealable order]; *San Diego Wholesale Credit Men's Assn.* v. *Superior Court* (1973) 35 Cal.App.3d 458, 462 [110 Cal.Rptr. 657]; see also Code Civ. Proc., §§ 485.240 [order to set aside right to attach order], 904.1, subd. (e) [only orders discharging or refusing to discharge attachment or granting a right to attach order are appealable]; 16 Cal. Law Revision Com. Rep. (1982) p. 717, fn. 47 [discharging writ of attachment as based on grounds that writ was improperly or irregularly issued].)

The second appeal is from the December 10 order granting summary judgment and the summary judgment itself. This notice of appeal was filed January 14, 1983. Although the order granting summary judgment is not an appealable order (*Tong* v. *Jocson* (1977) 76 Cal.App.3d 603, 604 [142 Cal.Rptr. 726], see *Classen* v. *Weller* (1983) 145 Cal.App.3d 27, 34, fn. 1 [192 Cal.Rptr. 914]), the summary judgment is appealable. (Code Civ. Proc., § 437c, subd. (*l*); *Durbin* v. *Fletcher* (1985) 165 Cal.App.3d 334, 341 [211 Cal.Rptr. 483].) Both the August 26 and December 10 orders are reviewable on appeal from the judgment. (Code Civ. Proc., § 906.)

Braun has also filed a cross-complaint against Islander Yachts, Inc., its president Roland (Buster) Hammond, and Islander's Attorneys Dennis E. Golob dba Law Offices of Dennis E. Golob and Gary Brown for abuse of process, intentional infliction of emotional distress, and unfair business practices as a result of this case. This aspect of the case is not before the court on appeal.

*Inc.* (3d Cir. 1980) 633 F.2d 678, 680; *Fahey* v. *Gledhill* (1983) 33 Cal.3d 884, 887 [191 Cal.Rptr. 639, 663 P.2d 197]; *Farwest Steel Corp.* v. *Barge Sea-Span* (9th Cir. 1985) 769 F.2d 620 [federal admiralty jurisdiction over contract for repair of vessel]; see also Comment (1921) 10 Cal.L.Rev. 55.) Only if the contract is of a maritime nature—related to a maritime service or transaction—does federal admiralty jurisdiction exist. (*Graco, Inc.* v. *Colberg, Inc.* (1984) 162 Cal.App.3d 322, 327 [208 Cal.Rptr. 465], cert. den., — U.S. — [88 L.Ed.2d 56, 106 S.Ct. 69].) Contracts for construction of a vessel are nonmaritime contracts because, until launched, a vessel is not directly connected with navigation or commerce by water sufficient to bring it within admiralty jurisdiction. (See, e.g., *Thames Co.* v. *The "Francis McDonald"* (1920) 254 U.S. 242, 243-245 [65 L.Ed. 245, 246, 41 S.Ct. 65]; *B & B Salvage & Rigging, Inc.* v. *M/V North Bend* (E.D.Mo. 1982) 548 F.Supp. 123, 124, affd. (8th Cir. 1983) 716 F.2d 908; *Jensen* v. *Dorr* (1914) 23 Cal.App. 701, 702 [139 P. 659].) Although the distinction between contracts for vessel construction and contracts for vessel repair has been criticized, federal courts continue to make it. (See *Ohio Barge Line, Inc.* v. *Dravo Corporation* (W.D.Pa. 1971) 326 F.Supp. 863, 864.) There being no federal admiralty jurisdiction, Islander's claim is properly brought under the state vessel lien statutes. (See *Jensen* v. *Dorr, supra,* 23 Cal.App. at p. 702 [former statute]; see also §§ 490, 491.)

## III. ESTOPPEL

██ Braun contends that Islander is estopped from asserting the state vessel lien because it stated in its master carpenter's certificate[7] that it had conveyed 100 percent of its interest in the vessel to Sailboats/Sausalito. The certificate did not state that the vessel was subject to a lien pursuant to section 491. ██ ██ ██ Islander contends that Braun had no right to rely on the master carpenter's certificate because this document is not a true lien release.[8]

██ The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he or she intentionally led another to believe a particular

---

[7]A master carpenter's certificate is a United States Coast Guard prerequisite to the enrollment and registry of a vessel; it is executed only on the vessel's completion. (*Garcia* v. *American Marine Corporation* (5th Cir. 1970) 432 F.2d 6, 7, fn. 2.)

[8]Islander contends that the estoppel question was not decided below and that Braun may not raise this issue for the first time on appeal. However, Braun did raise an estoppel defense and the trial judge's notice of intended ruling implies that estoppel would support its August 26 order by finding that Braun had no knowledge of the lien, that he was entitled to rely on statements made by Islander's owner, that such reliance was justified, and that the master carpenter's certificate did not state that conveyance to Sailboats/Sausalito was subject to a vessel lien. The issue was properly preserved for consideration on appeal.

circumstance to be true and to rely on this belief to his or her detriment. Equitable estoppel bars a claim when the party to be estopped is apprised of the facts, and intends that his or her conduct be acted on, or so acts that the party asserting the estoppel has a right to believe it was so intended; and when the party asserting estoppel is ignorant of the true state of facts, and relies on the conduct of the party to be estopped to his or her detriment. (*County of Los Angeles* v. *City of Alhambra* (1980) 27 Cal.3d 184, 196 [165 Cal.Rptr. 440, 612 P.2d 24]; *Strong* v. *County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264].)

■ The existence of estoppel is a question of fact for the trial court, whose decision will be upheld on appeal if supported by substantial evidence. (*People* v. *Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 531 [206 Cal.Rptr. 164].) ■ Estoppel to assert a lien may be inferred from the circumstances and from the conduct of the parties. (*R.D. Reeder Lathing Co.* v. *Allen* (1967) 66 Cal.2d 373, 378 [57 Cal.Rptr. 841, 425 P.2d 785] [mechanic's lien].) Islander, in the business of constructing yachts, knew of the existence of the vessel lien; Braun did not.[9] When purchasing the vessel, Braun and his lender relied on Islander's statement in the master carpenter's certificate that Islander retained no interest in it. Islander's silence about the existence of the lien supports "an inference of guile"—an inference that Islander intended that its affirmative statement that it had conveyed 100 percent of its interest in the vessel to Sailboats/Sausalito should lull Braun into believing that Islander had no right to assert a lien against the vessel. (*R.D. Reeder Lathing Co.* v. *Allen, supra,* 66 Cal.2d at pp. 378-379; see Evid. Code, § 623.) The natural inclination of Braun and his lender to rely on Islander's representation that it had conveyed 100 percent of its interest in the vessel to Sailboats/Sausalito before Braun purchased it was particularly justified because Islander's president executed the master carpenter's certificate himself.

Islander opened the door to Braun's and Wells Fargo Bank's reliance on the representations in the master carpenter's certificate, even though that reliance might not be completely justified. (See *Corsa Boats, Inc.* v. *Sun Bank of Miami* (Fla. 1981) 405 So.2d 1340 [vessel manufacturer estopped after executing title registration transferring vessel free of liens, enabling purchaser to borrow funds from bank].) Islander is estopped from asserting a state vessel lien. (§ 491.)

---

[9]Islander contends that Braun is not a bona fide purchaser without notice, because Braun knew that Islander was the vessel builder. However, Braun did not know of the vessel *lien*—the critical fact for purposes of determining if Braun is a bona fide purchaser. (See part IV, *post;* see also *Brown* v. *Johnson* (1979) 98 Cal.App.3d 844, 847 [159 Cal.Rptr. 675].)

## IV. Vessel Sale to Bona Fide Purchaser

Section 491[10] provides that a state vessel lien has "preference over all other demands" against the vessel. However, Braun contends that, even if Islander is not estopped from asserting the lien, his bona fide purchase of the vessel from Sailboats/Sausalito before the date Islander filed its lien extinguishes the lien.[11] (See *Graham v. Annis* (1915) 28 Cal.App. 754, 760 [153 P. 981]; see also *Brown v. Johnson, supra,* 98 Cal.App.3d at p. 851 [vendor's lien].) This presents a question of first impression. In its notice of intended ruling, the trial court explained its decision to grant Braun's motion to set aside the right to attach order and quash the writ of attachment: "[T]here is nothing about the statutory lien created by Harbors and Navigation Code Sections 490, et seq., which protects it from defeasance upon transfer of the property to a bonafide purchaser for a value without notice. While the precise issue was not then before the Court, the language in *Graham v. Annis* (1915) 28 CA 754, 760, is compelling. When analyzing the nature of this very statutory lien, the Court therein stated: [¶] '. . . It seems to us the lien declared by the statute would not preclude the owner from transferring the vessel to a bonefide [*sic*] purchaser, for value without notice of the lien.' [¶] The opinion goes on to state that it is this very quality of defeasance which persuades the Court that attachment of other property of the defendant should be permitted. Accordingly, the Court concludes and finds that . . . Braun purchased the vessel for valuable consideration without notice of [Islander's] lien and thereby extinguished the lien. [Citation.]" Islander contends that the language in *Graham* is dicta and that the trial court erred in relying on it.

In *Graham,* the plaintiff sued a vessel owner to obtain payment for repairs made to the vessel. The plaintiff obtained a writ of attachment issued under the terms of the general attachment law (former Code Civ. Proc., § 540) rather than the vessel lien law (former Code Civ. Proc., § 813 [now § 491]). On appeal, the defendant contended that the vessel lien statute provided the exclusive means for attaching the vessel to satisfy the debt. The appellate court disagreed, finding that the plaintiff could also attach the vessel under the provisions of the general attachment law. (*Graham v. Annis, supra,* 28 Cal.App. at pp. 754-758.)

---

[10]Section 491 provides, in part: "All vessels are liable for: . . . [¶] (c) Work done or materials furnished in this State for their construction. . . . [¶] (f) . . . Demands for these several causes constitute liens upon all vessels . . . and have preference over all other demands; but such liens only continue in force for the period of one year from the time the cause of action accrued."

[11]Braun also suggests that the trial court ruling was proper because the voidable title and entrustment doctrine of California Uniform Commercial Code section 2403 precludes Islander's claim and because sections 491 and 495.1 are unconstitutional. Because we find the estoppel argument and *Graham* controlling, we need not reach these questions.

Under the terms of the general attachment law, the plaintiff could not obtain a writ of attachment if payment of the claim had been secured by any other lien. The defendant contended that, pursuant to the vessel lien law, the plaintiff had a vessel lien in existence at the time he obtained the writ of attachment; thus, the plaintiff was precluded from obtaining a writ of attachment under the terms of the general attachment law. Again, the appellate court disagreed, finding that the vessel lien may not be enforced until the plaintiff files an action pursuant to the vessel lien law or attaches the vessel. Until the lienholder perfects the lien in this manner, the court said, the vessel lien "would not preclude the owner from transferring the vessel to a *bona fide* purchaser for value without notice of the lien." (Italics in original.) Because the vessel lien to which the statute entitled the plaintiff had not been perfected, it did not constitute such a "fixed, determined" lien that an action pursuant to the general attachment statute was precluded. (*Graham* v. *Annis, supra,* 28 Cal.App. at pp. 758-761.)

Because much of section 491 has been preempted by application of federal law (see part II, *ante*), there are no recent cases discussing its provisions. Other than *Graham,* there are no cases discussing whether a bona fide purchase that predates the perfection of a state vessel lien pursuant to section 491 defeats that lien.[12] The *Graham* ruling that a vessel lien is not enforceable until it has been perfected by the filing of a complaint or by attachment was critical to the court's holding that the attachment was proper under the general attachment law. The specific language the trial court relied on in *Graham* to support its decision that Braun's bona fide purchaser status defeated Islander's lien was dicta. However, we believe that the facts of the present dispute illustrate the reasonableness of the *Graham* language. We now adopt this language.

Islander did not file its action to foreclose on the lien until May 18, a month after Braun had purchased the vessel in April. Braun was clearly a bona fide purchaser, as he had no notice of the existence of the lien until Islander brought its action to foreclose on it. (See fn. 9, *ante.*) Islander contends that the vessel lien should relate back to the date when construction of the vessel began. However, this would be inconsistent with dicta in *Graham* and with our holding here that, until the state vessel lien is perfected by filing the complaint and serving process or by attachment, a vessel owner could extinguish the lien by transferring the vessel to a bona fide purchaser without notice of that lien. (*Graham* v. *Annis, supra,* 28 Cal.App. at p. 760; see *Fisher* v. *White* (1857) 8 Cal. 418, 422-423 [coming to similar result

---

[12]Although section 491 was enacted after the 1915 *Graham* decision (Stats. 1937, ch. 368, § 491, pp. 805-806), the predecessor statute, former Code of Civil Procedure section 813, in effect at that time, was substantively identical to the present statute. (Code Amends. 1873-1874, ch. 383, § 104, p. 327.)

based on predecessor statute that differs significantly from present statute language].)[13]

Finally, Islander analogizes to federal law and contends that even if Braun is a bona fide purchaser, this status does not extinguish the lien. Under federal law, a trustee in bankruptcy is deemed to have the status of a bona fide purchaser of real property. (11 U.S.C. § 544(a)(3).) In *Jensen* v. *Dorr, supra,* 23 Cal.App. 701, a bankrupt vessel owner was obligated to satisfy a vessel lien. Although *Jensen* does not involve a bona fide purchaser (*id.,* at p. 704), Islander contends that *Jensen* compels us to find that a bona fide purchaser cannot defeat a vessel lien. Islander overlooks the crucial fact that the vessel at issue in *Jensen,* as in this case, is *personal* property, not *real* property. (See 3 Witkin, Summary of Cal. Law (8th ed. 1973) Personal Property, § 149, p. 1738; see also *In re Cosmopolitan Aviation Corp.* (Bankr. E.D.N.Y. 1983) 34 Bankr. 592 [trustee in bankruptcy does not have rights of bona fide purchaser of personal property].)

The parties attempt to liken section 491 vessel liens to mechanics' liens, vendor's liens, or federal maritime liens.[14] We are satisfied that *Graham*

---

[13]In its brief, Islander cites *Jensen* v. *Dorr, supra,* 23 Cal.App. 701 for the proposition that the lien should relate back to the date of construction. In fact, *Jensen* held only that as long as the lienholder brings the action within one year after the right to obtain the lien accrues, attachment itself may occur after the one-year statute of limitations expires. (*Jensen* v. *Dorr, supra,* 23 Cal.App. at p. 703; see § 491.) The following year, *Graham* held that the lienholder has a right to enforce the lien within one year after the lien accrues, but that the lien is not enforceable until perfected by complaint and summons or by attachment. (*Graham* v. *Annis, supra,* 28 Cal.App. at pp. 760-761.) It is also worthy of note that *Jensen* stated "[t]here is nothing in the record here to show that anybody is concerned as to the validity of this judgment other than the plaintiff and defendant." (*Jensen* v. *Dorr, supra,* 23 Cal.App. at p. 704.) Thus, the *Jensen* court was not faced, as we are, with a bona fide purchaser's interest in the vessel.

Islander also cites numerous mechanics' lien cases to support its claim that the vessel lien should relate back to the date that construction of the vessel began. Islander contends that *Bennett* v. *Beadle* (1904) 142 Cal. 239 [75 P. 843] requires that mechanics' liens and vessel liens be treated equally, and because a mechanic's lien relates back to the date that work began (see Civ. Code, § 3134; *Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 808 [132 Cal.Rptr. 477, 553 P.2d 637], app. dism., 429 U.S. 1056 [50 L.Ed.2d 773, 97 S.Ct. 778]), vessel liens should also relate back to the date construction began. However, *Bennett* is not as broad as Islander would lead us to believe. In this case, persons who furnished materials in California to be used to construct a vessel in Oregon had "furnished materials for construction in this state" within the meaning of the vessel lien statute. *Bennett* held that comparable language in the mechanic's lien law and this language in the vessel lien law were to be construed in the same manner. (*Id.,* at p. 243.) The cases citing *Bennett* have not adopted the broader proposition that Islander proposes it means: that mechanics' liens and vessel liens are equal for *all* purposes. (See *Ensele* v. *Jolley* (1922) 188 Cal. 297, 300 [204 P. 1085]; *Jensen* v. *Dorr* (1911) 159 Cal. 742, 746 [116 P. 553]; *Consolidated Elec. Distributors, Inc.* v. *Kirkham, Chaon & Kirkham, Inc.* (1971) 18 Cal.App.3d 54, 58 [95 Cal.Rptr. 673].)

[14]As might be expected, those liens Islander urges us to find comparable to state vessel liens would preclude a bona fide purchaser from recovering (see *Vandewater* v. *Mills,*

states the law as it pertains to vessel liens; thus, we see no reason to seek similarities between the liens urged on us and the lien at issue in this case. Under the state vessel lien law (§ 491), a bona fide purchaser who purchases a vessel without notice of the lien before the lien is perfected extinguishes that lien. (*Graham* v. *Annis, supra.*) The trial court properly set aside the order to attach and quashed the writ of attachment.

## V. SUMMARY JUDGMENT

Having found that the order to set aside the attachment and to quash the writ of attachment were proper, the summary judgment was also properly granted. ■ A motion for summary judgment must be granted if there is no triable issue as to any material fact and the moving party is entitled to a summary judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 662 [150 Cal.Rptr. 384, 12 A.L.R.4th 27].) The trial court having found that there was no lien, Braun had a right to a summary judgment in Islander's action to foreclose on the lien as a matter of law.

The judgment is affirmed.

Anderson, P. J., and Poché, J., concurred.

---

*Claimant Steamship Yankee Blade* (1857) 60 U.S. 82, 89 [15 L.Ed. 554, 556] [federal maritime lien]; Civ. Code, § 3134 [mechanics' liens]), while those suggested as comparable by Braun would allow a bona fide purchaser to prevail. (*Brown* v. *Johnson, supra,* 98 Cal.App.3d at pp. 850-851 [vendors' liens].)