## MACDOUGALL'S CAPE COD MARINE SERVICE, INC., Plaintiff,

v.

## ONE CHRISTINA 40 FOOT VESSEL, HULL NO. XSA 4007F787, Its Engines, Tackle, Equipment and Appurtenances, Etc., In Rem, Defendant.

### Civ. A. No. 88–728–C.

United States District Court,
D. Massachusetts.

Aug. 31, 1989.

Leonard Rose, Falmouth, Mass., for plaintiff.

Brian Flanagan, Flanagan & Hunter, P.C., Boston, Mass., for claimant Stuart R. Fultz.

### MEMORANDUM

CAFFREY, Senior District Judge.

This case is now before the Court on claimant's motion for relief from judgment under Fed.R.Civ.P. 60(b)(6). After conducting a hearing on the motion and after lengthy consideration of the pleadings, this Court has determined that claimant's motion should be allowed and the May 24, 1988 default judgment should be set aside.

Claimant Stuart Fultz was engaged part-time in the business of selling new Hans Christian yachts. He took title to the vessel in dispute, a forty-foot Christina sailboat, in July of 1987 and arranged for plaintiff MacDougall's Cape Cod Service, Inc. ("MacDougall's") to commission the vessel at its boatyard in Falmouth, Massachusetts. Commissioning the vessel involved the installation of the masts, spars, rigging, winches, and various other deck tackle, and servicing the machinery to prepare for the launching. The vessel was launched in September, and thereafter travelled to boat shows in Newport, Rhode Island and Stamford, Connecticut. After the Stamford boat show, the vessel was returned to MacDougall's and was later hauled from the water to be placed in winter storage.

Beginning in September of 1987, claimant received monthly statements from Mac-

Dougall's for services rendered in connection with the vessel. Claimant alleges that on several occasions he attempted to discuss with Scott Dayton, the general manager of MacDougall's, what he thought were excessive charges by MacDougall's for its services. Claimant further alleges that sometime in late January or early February of 1988 Dayton informed him that he had a lien on the vessel and would not allow the vessel to leave the boatyard until the bill was paid in full. According to claimant, he had no further conversations with anyone at MacDougall's until after August of 1988.

On March 28, 1988, MacDougall's filed a verified complaint in admiralty ("the Complaint") asserting an action in rem against the vessel. The Complaint provides in part:

> Pursuant to Title 46 U.S. Code, Section 971, and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, the plaintiff claims a maritime lien against the defendant Vessel to the extent of the unpaid balances which are now owed, in the amount of $31,-208.01 plus interest at 18% per annum percent from September 1987.

Complaint at ¶ 4. Plaintiff requested that: 1) the vessel be attached and arrested; 2) defendant be adjudged liable to plaintiff for the specified amount; and 3) the vessel be sold to satisfy plaintiff's judgment with interest.

The vessel was arrested on March 31, 1988 and publication of the arrest was made in the Cape Cod Times, a newspaper of general circulation where the vessel was located. Thereafter, plaintiff filed a request for entry of default and judgment under Fed.R.Civ.P. 55(b)(1), and after a May 9 Notice of Default, judgment by default was entered on May 24. Following a Notice of Sale published in the Boston Herald, the vessel was auctioned to Scott Dayton, on behalf of plaintiff, as highest bidder on July 22. Plaintiff then stipulated that its $34,484.85 judgment would be deemed satisfied if the sale were confirmed. This Court confirmed the sale on July 27, 1988. Claimant alleges that he did not receive actual notice of the arrest, default judgment, and sale of the vessel until late January of 1989.

Claimant filed a March 3, 1989 motion for relief from judgment and to file a claim. He argues primarily that the Court lacks subject matter jurisdiction over this action and that the procedures and rules as applied here violated his due process rights because he was not given any meaningful notice of the arrest, default, and sale. Plaintiff argues in response that the Court clearly has jurisdiction over these maritime lien claims under 28 U.S.C. § 1333. Plaintiff also argues that the procedures followed in arresting the vessel, obtaining the default judgment, and implementing the judgment by judicial sale were in full compliance with the applicable Supplemental Rules for Certain Admiralty and Maritime Claims ("the Supplemental Rules"). Given this Court's determination that we lack subject matter jurisdiction over plaintiff's claims and that the default judgment should accordingly be set aside, we need not address claimant's due process challenge.

Section 1333 of Title 28 provides that the district courts shall have original jurisdiction of "[a]ny civil case of admiralty or maritime jurisdiction...." 28 U.S.C. § 1333. In *People's Ferry Co. of Boston v. Beers*, 61 U.S. 393, 15 L.Ed. 961 (1858), the United States Supreme Court explained that "[t]he admiralty jurisdiction, in cases of contract, depends primarily upon the nature of the contract, and is limited to contracts, claims and services, purely maritime, and touching rights and duties appertaining to commerce and navigation." *Id.*, 61 U.S. at 401. The Court held in that case that a contract for building a vessel or supplying materials for the vessel's construction is not a maritime contract.

This "original construction" doctrine was later expanded by the Court in *Thames Co. v. The Francis McDonald*, 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245 (1920). The Court concluded in *Thames Co.*: "[W]e think the same reasons which exclude [construction] contracts from admiralty jurisdiction likewise apply to agreements made after the hull is in the water, for the work and

material necessary to consummate a partial construction and bring the vessel into condition to function as intended." *Id.* at 245, 41 S.Ct. at 66. Such agreements are treated as being "merely preliminary to the use of the vessel as an instrument of commerce and navigation," 1 Benedict on Admiralty § 186 at 12–31 (7th ed. 1988), and are therefore not viewed as a sound basis to support admiralty jurisdiction. *See, e.g., Boat La Sambra v. Lewis,* 321 F.2d 29, 31 (9th Cir.1963) ("Even after the vessel is launched, while she is not yet sufficiently advanced to discharge the functions for which she is designed, the materials, work and labor for her completion are not the subject matter of admiralty jurisdiction.").

■ Claimant contends, and plaintiff does not dispute, that the majority of the amount claimed by plaintiff covers services rendered by MacDougall's in connection with the commissioning of the vessel. Affidavit of Stuart Fultz at ¶ 4. When the vessel arrived at MacDougall's boatyard by overland carrier in late July of 1987, it was essentially a completed hull with an engine installed. MacDougall's had agreed to commission the vessel, as it had done before for other of claimant's new vessels. As described earlier, such services included installing the masts, spars, rigging, winches, and other deck tackle and servicing the machinery in preparation for the launching. Once the new vessel was commissioned, it then travelled to two boat shows. Later, the vessel was returned to the boatyard for winter storage. The vessel remained in storage throughout the course of this in rem action.

This Court cannot help but conclude that plaintiff's agreement to commission the vessel amounts to an agreement "for the work ... necessary to consummate a partial construction and bring the vessel into condition to function as intended." *Thames Co. v. The Francis McDonald,* 254 U.S. at 245, 41 S.Ct. at 66. The agreement falls squarely within the original construction doctrine given that: 1) the outfitting was necessary before the new vessel could serve its intended purpose as a pleasure sailboat; 2) plaintiff was well aware that

the vessel could not leave the boatyard ready to serve its intended purpose without the outfitting; and 3) the agreement was made and the majority of the work was performed before the vessel was even launched. *See B & B Salvage & Rigging, Inc. v. M/V North Bend,* 548 F.Supp. 123, 124 (E.D.Mo.1982), *aff'd,* 716 F.2d 908 (8th Cir.1983). Consistent with the reasoning of *People's Ferry Co. of Boston* and *Thames Co.,* the contract at issue in the present case cannot support federal jurisdiction under 28 U.S.C. § 1333.

Plaintiff contends that even if a portion of its claims are nonmaritime and a portion are maritime the Court may exercise jurisdiction over this case under the doctrine of pendent jurisdiction. The general rule, however, is that "a contract, in order to come within the admiralty jurisdiction, must be wholly maritime." *United Fruit Co. v. U.S. Shipping Board Merchant Fleet Corp.,* 42 F.2d 222, 224 (D.Mass.1930) (citations omitted); *see also Outbound Maritime Corp. v. P.T. Indonesian Consortium,* 582 F.Supp. 1136, 1142 (D.Md. 1984); *Proleride Transport Systems, Inc. v. Union Carbide Corp.,* 498 F.Supp. 680, 682 (D.Mass.1980). There are two exceptions to this general rule. First, if the nonmaritime element is only incidental, it will not destroy jurisdiction, and second, if the contract is divisible whereby the maritime obligations may be enforced without prejudice to the rest, there is admiralty jurisdiction to that extent. 1 Benedict on Admiralty § 189 at 12–10 (7th ed. 1988).

In the present case, plaintiff has not established that either of the exceptions applies, and therefore we must follow the general rule. Given that the majority of the costs claimed by plaintiff relate to services rendered in commissioning the vessel, it is impossible to say that the nonmaritime element is relatively unimportant. Furthermore, plaintiff has not shown that any potential maritime element is subject to separate adjudication. Plaintiff has made no attempt to clarify for the Court the maritime versus nonmaritime claims or to itemize the maritime and nonmaritime services separately. We are unable to sever any potential maritime claims from the dis-

tinctly nonmaritime claims. Accordingly, the Court cannot assert its admiralty jurisdiction based on a maritime contract theory. *See Kuehne & Nagel v. Geosource, Inc.* 625 F.Supp. 794, 798 (S.D.Tex.1986), *vacated on other grounds,* 874 F.2d 283 (5th Cir.1989).

■ Plaintiff argues that claimant is not entitled to relief under Rule 60(b)(6) because his motion was not filed within a "reasonable time" as required by Rule 60(b). Plaintiff contends that it has been prejudiced by claimant's delay in seeking relief particularly as the vessel has been sold to a *bona fide* third party. What constitutes a reasonable time under Rule 60(b) depends upon the facts of the case at hand. In the present case, the claimant contends that he did not receive actual notice of the arrest of the vessel, default judgment, and sale of the vessel until late January of 1989. Plaintiff contends that claimant received actual notice of the arrest of the vessel as early as April of 1988, and therefore was aware of the need to act.

Based on the testimony presented at the April 19, 1989 hearing on claimant's motion, this Court concludes that claimant received actual notice of the arrest of the vessel in November of 1988, and was thereby made aware of his need to act. At that time, claimant visited the plaintiff's boatyard and discovered that the vessel had been moved inside. Given that claimant expected to be charged only for the less costly outside storage option and given that he had previously seen the vessel in outside storage, he was put on notice that plaintiff was asserting a personal interest in the vessel. Furthermore, a witness testified at the hearing that claimant looked at and read the Public Notice of Attachment posted on the vessel during his November visit to the boatyard. Transcript at 14–15. In light of the fact that claimant filed his Rule 60(b)(6) motion on March 3, 1989, we

conclude that the motion was made within a reasonable time.[1]

In sum, this Court lacks subject matter jurisdiction over plaintiff's claims given that the claims are substantially nonmaritime and not capable of separate adjudication. Accordingly, claimant's motion under Rule 60(b)(6) should be allowed and the Court's May 24, 1988 default judgment should be set aside.

Order accordingly.

---

1. This Court is unpersuaded by plaintiff's prejudice argument. Plaintiff should have been more forthright with the Court from the time the Complaint was filed as to the nature of the services for which plaintiff sought compensation. Indeed, the Court is troubled that the jurisdictional issue has largely been dodged by plaintiff from the very start. The original construction doctrine is firmly entrenched in the case law and cannot be of any surprise to plaintiff or plaintiff's counsel.