In re BAY STATE YACHT
SALES, INC., Debtor.

BAY STATE YACHT SALES,
INC., Plaintiff,

v.

SQUANTUM ENGINE AND SERVICE
CO., INC., Defendant.

Bankruptcy No. 90–11194–HAL.
Adv. No. 90–1011.

United States Bankruptcy Court,
D. Massachusetts.

July 13, 1990.

Kathleen P. Dwyer, Ardiff & Morse P.C., Danvers, Mass., Chapter 11 Trustee for Day State Yacht Sales, Inc.

Thomas J. Raftery, Sherin & Lodgen, Boston, Mass., for Creditors Committee.

Gordon N. Schultz, Mark Stull, Schultz & Grossman P.A., Boston, Mass., for Squantum Engine & Service Co.

Barbara M. Therberge, Senior Counsel Bank of New England N.A., Law Department MABOS27BNE, Boston, Mass., for Connecticut Bank & Trust Co.

David L. Ruediger, Goodwin Proctor & Hoar, Boston, Mass., for Maryland National Bank.

Hertz Henkoff, Barron & Stadfeld, Boston, Mass., for Bay State Yacht Sales.

## MEMORANDUM ON VALIDITY OF FEDERAL AND MASSACHUSETTS STATE MARITIME LIENS

HAROLD LAVIEN, Bankruptcy Judge.

These issues arise before this Court in an adversary proceeding instituted by the debtor, Bay State Yacht Sales, Inc. (Bay State), against Squantum Engine & Services Co., Inc. (Squantum). By this action the debtor seeks, as a preferential transfer pursuant to 11 U.S.C. §§ 545(2) and 547, to avoid Squantum's alleged liens against 27 boats owned and in the possession of the debtor.

The facts of this case are generally undisputed. The debtor operated a retail boat sales dealership in Quincy, Massachusetts since 1981. Squantum Engine performed repair and related work on many of the debtor vessels; it is also alleged that Squantum furnished many of these boats with supplies such as gasoline and oil. The debtor, Bay State, has not paid Squantum for these materials and services.

Squantum claims that it holds valid liens on the vessels pursuant to both the Massa-

chusetts Liens on Vessels Statute, M.G.L. ch. 255, Section 14, et seq., and the Federal Maritime Statute codified in 46 U.S.C. Appx. § 971.

The debtor filed its petition for protection under chapter 11 of the Bankruptcy Code on March 14, 1990 and now seeks to avoid the perfection of Squantum's liens under 11 U.S.C. § 545(2) on the basis that the liens would not be perfected or enforceable at the time of the commencement of the case against a bona fide purchaser.

Squantum furnished the labor and materials prior to the start of the preference period, but took no steps to make its claim public by any recording until a time within 90 days of the bankruptcy filing. On December 18, 1989, a date within the preference period, the Norfolk Superior Court granted two Writs of Attachment to Squantum. Two days later Squantum perfected these attachments by recording them in compliance with M.G.L. ch. 223, Section 50. The obvious issue is, when did the liens become so far perfected that even a bona fide purchaser could not get good unencumbered title?

Squantum argues from statutory construction that its lien established by M.G.L. ch. 255 Section 14 is automatically perfected such that it survives transfer of the subject vessel to a bona fide purchaser, without need for recordation even though the boats, without any distinguishing sign or indicia of any kind which would warn a good-faith purchaser that these boats were not part of the debtor's boat inventory unrestrictedly available for sale to the public. The Massachusetts statute provides that the Massachusetts maritime lien "shall be preferred to all others on such vessel, except that for mariners' wages, and shall continue until the debt is satisfied." From this statutory language the defendant argues that it is clear that the maritime lien is superior to a perfected security interest, without regard to the date of perfection. Squantum further reasons that it would be inconsistent to hold that a purchaser could prevail over a maritime lien, if the lien prevails over a perfected security interest which would prevail over the purchaser.

The basic premise is flawed since a bona fide purchaser from the dealer would prevail over the perfected floor plan, Mass. Gen.Laws ch. 106, § 9-307(1). Further, Squantum cited no Massachusetts case which holds that a statutory lien created by M.G.L. ch. 255 Section 14 would be perfected or enforceable against a bona fide purchaser who purchased one of the boats without notice or knowledge of the lien. Similar liens, such as the repairman's lien, Mass.Gen.Laws ch. 255, § 25, require possession which puts a potential buyer on notice, and the builder's lien, Mass.Gen. Laws ch. 254, § 2, has strict recording requirements, while the Massachusetts Maritime lien statute provides for the creation of a classic "secret lien." Such secret liens have always been viewed as contrary to the values of openness and equality which characterize and are basic to bankruptcy.

One of the principal purposes of the Bankruptcy Reform Act is to discourage the creation of "secret liens" by invalidating all transfers occurring within 90 days prior to the filing of the petitions.

*In re Arnett,* 731 F.2d 358 (6th Cir.1984). Nor is any one factor conclusive standing alone. Each transaction must be viewed on its facts bearing in mind the Code's abhorrence of secret liens. *White & Summers, supra,* n. 21 at 882–83.

*In re Puckett,* 60 B.R. 223 (Bkrtcy.M.D. Tenn.1986).

As one court put it, "One of the principal purposes of the Bankruptcy Reform Act is to discourage the creation of a 'secret lien' by invalidating all transfers occurring within 90 days prior to the filing of the petitions." *In re Arnett.*

*Redmond v. Mendenhall,* 107 B.R. 318 (Bkrtcy.D.Kan.1989). *In re Phillips,* 103 B.R. 893 (Bkrtcy.S.D.Ohio 1989); *In re Ehring,* 91 B.R. 897 (9th Cir. BAP 1988); *In re White Farm Equipment Co.,* 63 B.R. 800 (Bkrtcy.N.D.Ill.1986); *In re Harbour House Operating Corp.,* 26 B.R. 324 (Bkrtcy.D.Mass.1982), and *In re Valairco, Inc.,* 9 B.R. 289 (Bkrtcy.D.N.J.1981).

Since there is no reported Massachusetts case which deals specifically with the rights of a bona fide purchaser as against a

secret Massachusetts maritime lien holder this Court looks to the approach taken by the courts interpreting similar statutes in other states.

The New Jersey Maritime Lien Act is a statute substantially similar to Massachusetts' provisions for liens on vessels under M.G.L. ch. 255. In the case of *In the Matter of Mission Marine Assoc., Inc.*, 633 F.2d 678 (3rd Cir.1980), the Court held that under New Jersey law, bona fide purchasers are protected against a secret nonpossessory lien and that, therefore, the lien was vulnerable under the Bankruptcy Act section which invalidates, as against the bankruptcy trustee, statutory liens which would on the date of the filing of the petition be invalid against a bona fide purchaser from the debtor (under 11 U.S.C. § 545(2)). Citing earlier case law the court upheld the New Jersey policy of the protection of bona fide purchaser against secret nonpossessory liens:

> Secret liens upon chattels are an obstruction and a menace to trade and as such are against the policy of the law. They attempt to contradict and to destroy the universally accepted and natural, as well as legal, badge of ownership of chattels, which is possession. The law is most jealous in its protection of an innocent purchaser of a chattel for value without notice, who has relied upon possession as the badge of ownership.

*Id.*, at 681, *citing Lanterman v. Luby*, 96 N.J.L. 255, 114 A. 325 (E & A 1921).

*See, also,* the similar holding in *California Island Yachts, Inc. v. One Freeport 36' No. 145*, 173 Cal.App.3d 1081, 219 Cal.Rptr. 654 (1985). Since this Court has been provided with no authority in Massachusetts state law giving priority to the state maritime lien when unrecorded over a bona fide purchaser and because the reasoning of the Courts of New Jersey and California under similar maritime lien statutes refuse to give priority to the state's unrecorded maritime lien over a bona fide purchaser and, further, because it is well established that Bankruptcy abhors secret liens, this Court finds that the liens asserted by Squantum under the Massachusetts statute constitute secret liens which would not be valid as against a bona fide purchaser without notice.

■ The defendant argues in the alternative that it complied with the statute's recordation requirement. This it did. However, it is uncontested that Squantum recorded its liens and obtained attachments of the property within the 90–day preference period. Squantum further argues that if this recordation is construed to be a requirement for perfection, that perfection relates back to the date the lien first arose. The defendant provides no authority for such a "relation back," and none is explicitly provided for in the statute. The very essence of the avoidance power is to stop the relation back. 11 U.S.C. §§ 545(2) and 547(e). Therefore this Court finds that the Massachusetts Maritime Liens as asserted by the defendant would not be valid against a bona fide purchaser without notice and are therefore liens avoidable under 11 U.S.C. Section 545(2) by a trustee in bankruptcy who is unaffected by any knowledge or notice that the debtor may have under Section 544(a).

The defendant, Squantum, also claims that it has valid federal maritime liens on the 27 boats for which Squantum furnished labor and materials under its contract with the debtor and for which it has not been paid. Squantum relies on federal statute, 46 U.S.C. Appx. § 971, which states:

> Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.

Federal maritime liens established by 46 U.S.C. Appx. § 971 have been found by the courts to be created automatically upon the furnishing of repairs, supplies or other necessaries; to be superior to the interest of a bona fide purchaser; and to be not avoidable by a trustee in bankruptcy unless he is

able to establish a defense which would prevent the maritime lien claimants from asserting their lien against a bona fide purchaser. *See, Payne v. SS Tropic Breeze,* 423 F.2d 236 (1st Cir.1970); *Rayon Y. Celanese Peruana, S.A. v. M/V PHGH,* 471 F.Supp. 1363 (S.D.Ala.1979); *In re H & S Transp. Co.,* 42 B.R. 164, 12 B.C.D. 243 (Bkrtcy.M.D.Tenn.1984). The debtor-in-possession in this case has asserted no such defense, but does maintain that a federal maritime lien is wholly inapplicable to at least 16 of the 27 vessels that comprise the subject of this dispute. The debtor-in-possession, Bay State Yachts, argues that 16 of the boats upon which Squantum asserts federal maritime liens were new, and that the labor and materials provided by Squantum relate to the original construction of new vessels and, as such, fall outside maritime jurisdiction.

The cases are clear and legion, holding that a contract for the construction of a new vessel, or for the supplying of materials to a new vessel contributing to its construction does not fall within maritime jurisdiction. *See, East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986); *Thames Towboat Co. v. The Schooner Francis MacDonald,* 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245 (1920); *The Minnie V.,* 24 F.2d 604 (D.Mass.1927). In *MacDougall's Cape Cod Marine v. One Christina Forty Foot Vessel,* 721 F.Supp. 374 (D.Mass.1989), the court noted:

> The "original construction" doctrine was later expanded by the Court in *Thames Co. v. The Francis MacDonald* ... The Court concluded in *Thames Co.:* '[W]e think the same reasons which exclude [construction] contracts from admiralty jurisdiction likewise apply to agreements made after the hull is in the water, for the work and material to consummate a partial construction and bring the vessel into condition to function as intended.' ... Such agreements are treated as being 'merely preliminary to the use of the vessel as an instrument of commerce and

navigation,' ... and are therefore not viewed as a sound basis to supply admiralty jurisdiction....

.     *     *     *     *     *     *

This Court cannot help but conclude that plaintiff's agreement to commission the vessel amounts to an agreement 'for the work ... necessary to consummate a partial construction and bring the vessel into condition to function as intended.' ... The agreement falls squarely within the original construction doctrine given that: 1) the outfitting was necessary before the new vessel could serve its intended purpose as a pleasure sailboat; 2) the plaintiff was well aware that the vessel could not leave the boat yard ready to serve its intended purpose without the outfitting; and 3) the agreement was made and the majority of the work was performed before the vessel was even launched....

Consistent with the reasoning of ... *Thames Co.,* the contract at issue in the present case cannot support federal jurisdiction under 28 U.S.C. Sec. 1333.

There is also strong case law in support of the proposition that customization and addition of "extras" to a new vessel does not invoke the maritime jurisdiction of the federal courts. *See, Hatteras of Lauderdale,* 853 F.2d 848, 850 (11th Cir.1988) and *Boat La Sambra,* 321 F.2d 29, 30 (9th Cir.1963).

As a result of this argument, Squantum alleges that new issues of fact are raised which require some discovery and an evidentiary hearing. Therefore, this Court will address Squantum's potential defense that not all work falls within this exception after the parties have been afforded the opportunity to conduct discovery and, if necessary, present evidence. This Court orders expedited discovery, depositions of parties on 7–day notice and answers to interrogatories or production in 10 days, allowing 30 days for completion of discovery, and a hearing for the taking of evidence or report of settlement will be set on *Monday, August 30, 1990 at 1:30 p.m.*

As to the 11 remaining vessels, this federal maritime lien is, like the Massachusetts maritime lien, a secret lien; but unlike the Massachusetts maritime lien, it is supported as superior to a bona fide purchaser by case law. A federal maritime lien does not rely upon requirements of recordation for validity. In the case of *The Joseph Warner*, 32 F.Supp. 532 (D.Mass. 1939) the United States District Court for the District of Massachusetts characterized the federal maritime lien as:

> ... an appropriation of the ship as security for a debt or claim, such appropriation being made by the law; the law creates a remedy for the claim against the ship herself and vests in the creditor a special property in her, which subsists from the moment the debt arises and follows the ship into the hands of an innocent purchaser.

With regard to such federal maritime liens, the Supreme Court of the United States has held that: "this privilege or lien, though adhering to the vessel, is a secret one; it may operate to the prejudice of general creditors and purchasers without notice ...". *Osaka Shosen Kaisha v. Lumber Co.*, 260 U.S. 490, 497, 43 S.Ct. 172, 173, 67 L.Ed. 364 (1923). *See, also, The Josephine & Mary*, 120 F.2d 459 (1st Cir.1941); *The Joseph Warner*, 32 F.Supp. 532 (D.Mass.1939). This Court is bound by that precedent and, therefore, finds that as to the 11 used vessels Squantum holds valid federal maritime liens for the amount of its labor and materials and that such liens may not be avoided pursuant to 11 U.S.C. §§ 545(2) or 547.